Eduardo **LOPEZ, Juan Amarillas, Marco Antonio Burgueno–Diaz, Alberto Castillo–Zaragoza, Jose Cebreros, Ismael Gonzalez–Lopez, Francisco Olivera–Yanez, Guillermo Ramirez, Jose Guadalup Roa Mosqueda, Leoquildo Valdivia and Coalition for Immigrant & Refugee Rights & Services, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Harold EZELL, Western Regional Commissioner, Immigration and Naturalization Service, Steven Martin, Southern Regional Commission, Immigration and Naturalization Service, Alan Nelso, Commissioner, Immigration and Naturalization Service, and Richard Thornburgh, Attorney General, in their official capacities, Defendants.**

**No. 88–1825 JLI (BTM).**

United States District Court, S.D. California.

May 11, 1989.

Stephen A. Rosenbaum, Christine Brigagliano, San Francisco, Cal., Betty Wheeler, ACLU Foundation of San Diego & Imperial County, San Diego, Cal., Susan Salgado, El Centro, Cal., Lydia Gonzalez, Oceanside, Cal., for plaintiffs.

William Braniff, U.S. Atty. & Charles Hamilton, III, Asst. U.S. Atty., San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

IRVING, District Judge.

Plaintiffs' motion for preliminary injunction came on for hearing on February 21, 1989, at 10:30 a.m. before the Honorable J. Lawrence Irving, District Judge. Betty Wheeler, Steve Rosenbaum and Christine Brigagliano appeared on behalf of plaintiffs; Assistant United States Attorney Charles Hamilton appeared on behalf of defendants. At that time, the Court requested all counsel to report to the Honorable Barry T. Moskowitz, United States Magistrate for a settlement conference. The motion for preliminary injunction was then continued until April 24, 1989 at which time a consent order was presented to the Court which resolved some of the issues presented in the motion. The remainder of the motion was continued until May 1, 1989 at which time a modified consent order was entered and the motion for preliminary injunction was taken under submission.

Having considered the pleadings, the declarations and exhibits, and the written and oral arguments of counsel and law in support thereof, the court denies plaintiffs' motion for preliminary injunction.

## BACKGROUND

Plaintiffs are comprised of two groups of applicants for legalization under the Special Agricultural Worker (hereinafter "SAW") program established by the Immigration and Nationality Act, section 210, 8 U.S.C. § 1160 *et seq.*, (hereinafter the "Act"). The Act provides that alien agricultural workers meeting certain criteria may apply for legalization pursuant to 8 U.S.C. § 1160. Applicants in the first group, Group A, are those who have presented "non-frivolous" applications for legalization as SAWs. These applicants have been interviewed by a legalization officer of the Immigration and Naturalization Service (hereinafter "INS") and have been issued an "I-688A" document authorizing employment and travel abroad pending final adjudication of their SAW application. Applicants in the second group, Group B, are those who have filed preliminary applications for SAW status at the ports of entry. These applicants have been interviewed initially by an INS officer and have been issued an "I-94" document, endorsed as "S-9", authorizing employment and temporary admission into the U.S. to enable them to gather information and documents in support of a full SAW application.

Plaintiffs' initial motion sought a preliminary injunction to enjoin border agents and non-legalization INS officers from committing the following acts: 1) detaining SAW applicants and confiscating their I-688A and I-94 documents at or near the U.S./Mexican border; 2) questioning applicants with regards to fraud in the underlying application; and, 3) permitting applicants to enter only under a "parole" status. Plaintiffs also requested for provisional class certification.

Pursuant to the stipulated consent order entered into by all counsel and signed by the court on May 1, 1989, all issues have been resolved with the exception of the second basis for preliminary relief. Therefore, the sole issue that remains before the court is whether inspectors at ports of entry may question SAW applicants bearing a valid I-688A or an I-94 document with respect to possible fraud in their underlying SAW application.

Plaintiffs concede that border agents may question aliens in order to determine the facial validity of the I-688A documents (e.g., whether the documents are counterfeit or altered) and to verify that the document holder is the correct person named on the I-688A. However, plaintiffs object to any questions regarding the validity of the information in the underlying application itself. Plaintiffs argue that such questioning violates the confidentiality requirement under 8 U.S.C. § 1160(b) and subverts the congressional intent behind having a separate determination process for the applications.

Assuming that this practice is taking place, the Government argues that: 1) the statute merely makes the application and its contents confidential; 2) Congress did not intend to make the underlying information immune to inquiry; and, 3) Inspectors have broad powers to question anyone under 8 U.S.C. § 1225.

### DISCUSSION

#### 1. *Preliminary Injunction*

To prevail on a motion for preliminary injunction in cases involving the public interest, plaintiffs must show: 1) likelihood of success on the merits; 2) whether the balance of irreparable harm favors plaintiff; and 3) whether public interest favors the moving party. *Caribbean Marine Services Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir.1988). Relief may also be appropriate where plaintiff has demonstrated either: 1) a combination of probable success on the merits and a possibility of irreparable injury; or, 2) that serious questions are raised and the balance of hardships tip sharply in its favor. *Tribal Village of Akutan v. Hodel,* 859 F.2d 662 (9th Cir. 1988).

#### 2. *Statutory Construction*

The court must initially determine the scope of the confidentiality requirement under section 1160(b). "The starting point in every case involving construction of a statute is the language itself." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Where the language of the statute is ambiguous, the court must then determine the congressional intent. *Heppner v. Alaska Pipeline Service Co.,* 665 F.2d 868, 870–71 (9th Cir. 1981). If congressional intent cannot be clearly ascertained, the court then must determine whether "the agency's answer is based on a permissible construction of the statute." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1220 n. 29, 94 L.Ed.2d 434 (1987).

■ 8 U.S.C. § 1160(b)(6), *Confidentiality of Information* states:

"Neither the Attorney General, nor any other official or employee of the Dept. of Justice, or bureau or agency thereof, may–

(A) use the information furnished pursuant to an application filed under this section for any purpose other than to make a determination on the application or for enforcement of paragraph (7) [which establishes penalties for false statements in application],

(B) make any publication whereby the information furnished by any particular individual can be identified, or

(C) permit anyone other than the sworn officers and employees of the Dept. or bureau or agency or, with respect to applications filed with a designated entity, that designated entity, to examine individual applications."

Plaintiffs characterize the information obtained by the agents' questioning of aliens as "information furnished pursuant to a SAW application" and therefore confidential and immune from inquiry. The court disagrees. The language of the statute, interpreted in a logical fashion, makes only the application and any information taken from the application confidential. On its face, the language of section 1160(b)(6) does not extend to the information not obtained directly from the application itself. However, recognizing that the language may be ambiguous, the court turns to the legislative history of the Act. The relevant portion reads, under *Processing of applications for legalization:*

"[A]ll decisions on applications must be made by the Attorney General ["AG"] following a personal interview by an INS official. The files and records kept by the organizations are confidential, and not accessible to the AG or any other governmental entity. The applicant must consent to the application being forwarded for official processing. The confidentiality of the records is meant to assure applicants that the legalization process is serious, and not a ruse to invite undocumented aliens to come forward only to be snared by the INS."

Pub.L. 99–603, H.R. 99–682(I), 99th Cong. 2nd Sess. *reprinted in* 1986 U.S.Code Cong. & Admin. News, 5649, 5677.

Clearly, Congress intended that the official record including the application itself and the information contained therein to be confidential. Such confidentiality is required to prevent the application or the information contained in the application from unauthorized disclosure by the Legalization Office to other agencies or other departments within the INS.

■ However, questioning of aliens by border agents is an act independent of the application process. Applicants are initially instructed by border officials that they need not answer the questions posed. Plaintiffs have not disputed this nor have they alleged that agents ask aliens to divulge the contents of their application. Rather, the questions that agents ask appear to be: "where do/did you live and for how long?" Even if these particular types of questions elicit responses that are similar to facts contained in the application, those underlying facts themselves do not have any independent immunity outside of the application.

Plaintiffs argue that because border officials have no authority to exclude SAW applicants, they in turn have no authority to question the applicants. While this rationale may make intuitive sense, it is not supported by the statutory language nor the Act's legislative history.

Border agents have broad powers to inspect and question all aliens entering the United States under 8 U.S.C. § 1225. A major part of the agents' work is ferreting out fraud. Congress was clearly concerned about fraud in the applications. This is evident from section 1160(b)(6)(A) which lifts the application's confidentiality for the purpose of enforcing the penalty for fraud provision under section 1160(b)(7).

■ Plaintiffs also argue that the questioning of aliens infringes upon the Legalization Office's exclusive right to make a final determination on the merits of the SAW applications. INS regulations, as embodied in 8 C.F.R. § 210.1(d) states:

*"Determination process.* Determination process as used in this part means reviewing and evaluating all information provided pursuant to an application for the benefit sought and making a determination thereon. If fraud, willful misrepresentation of a material fact, a false writing or document or any other activity prohibited by section 210(b)(7) of the Act is discovered during the determination process the Service shall refer to a U.S. Attorney for possible prosecution ..."

While the legalization officer is responsible for ultimately determining the merits of the application and referring a finding of fraud to the United States Attorney for prosecution, Section 210.1 is silent as to the actual process of investigating fraud. Nothing in the regulation prohibits others from investigating and referring suspicions of fraud, arrived at independent of the application process, to the Legalization Office to aid the legalization officer in making a final determination. The statute does not prohibit the legalization officer from receiving information from other sources regarding an application. Such referral does not infringe upon the legalization officer's review and evaluation of the application.

Furthermore, plaintiffs' due process rights are protected as they have the right to inspect and contradict all information adverse to the applications before a decision is made pursuant to 8 C.F.R. 103.-2(b)(2). Therefore, any information forwarded by the border officials is rebuttable.

## CONCLUSION

Plaintiffs' motion for preliminary relief for violation of the confidentiality requirement under 8 U.S.C. § 1160(b)(6) is denied. As to the alleged violation of the confidentiality requirement through border agents and non-legalization INS officials questioning aliens as to possible fraud, the court finds that plaintiffs have failed to show a probable success on the merits. *Caribbean Marine Services Co. v. Baldridge,* 844 F.2d 668 (9th Cir.1988); *see also Tribal Village of Akutan v. Hodel,* 859 F.2d 662 (9th Cir.1988). Not only is the govern-

ment's position based on a permissible construction of the confidentiality requirement, the court finds that the language of section 1160(b)(6), its legislative history, and INS regulations do not indicate that the confidentiality requirement should be so broadly construed as to completely immunize the underlying facts contained in the application from any independent inquiry. The confidentiality provision does not apply to prohibit all inquiry at ports of entry which may go to establish possible fraud in the underlying application. Furthermore, such inquiry does not infringe upon the Legalization Office's right to determine the merits of the application.

IT IS SO ORDERED.