**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LOURDES SORIANO-VINO,
                                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                                    *Respondent.*

No. 06-73345

Agency No.
A092-732-826

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 3, 2010—Pasadena, California

Filed August 10, 2011

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and Jack Zouhary, District Judge.*

Opinion by Judge Rawlinson;
Concurrence by Judge Zouhary

---

*The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

10543

**COUNSEL**

Nancy E. Miller, Esq., Pasadena, California, for defendant-appellant Lourdes Soriano-Vino.

Christina B. Parascandola, Assistant United States Attorney, Washington, DC, for plaintiff-appellee Eric H. Holder Jr., Attorney General.

**OPINION**

RAWLINSON, Circuit Judge :

This case requires us to interpret and apply the confidentiality provision of the statute governing the Special Agricultural Workers program (SAW). *See* 8 U.S.C. § 1160. Because we conclude that the confidentiality provisions were not contravened during the inspection at issue in this case, we deny the petition for review.

## I. BACKGROUND

This case originated at an inspection checkpoint in the Los Angeles International Airport (LAX). Appellant Lourdes

Vino-Soriano (Soriano) was returning from the Philippines when she was asked by an Immigration and Naturalization Service (INS) inspector where she worked and for whom she worked. After Soriano answered the questions, the inspector asked her to remain in the waiting area. After two to three hours, two other inspectors entered and interrogated Soriano for five to six hours.

Soriano stated that she was told by the inspectors that her green card was fake and that she could be deported immediately. She was also told that the inspectors were checking her record. Soriano remembered being informed that she was not entitled to an attorney and recalled being denied her request to make a telephone call or use the bathroom. Soriano did not feel she could leave the room.

In the course of the interview, Soriano signed a sworn statement reflecting her responses to the questions, including her admission that she committed fraud to obtain her status under the SAW program. One question of particular interest to the inspectors was whether Soriano had worked on the farm listed as her place of employment when she obtained admission under the SAW program. Soriano verbally denied working on the farm and repeated the denial in her sworn statement. According to Soriano, she had no choice but to sign the sworn statement, because the INS officers threatened to send her back to the Philippines. Soriano later contended that not all of the information in the sworn statement was true. Specifically, Soriano asserted that her statement about not working on the farm was false.

When questioned about the inconsistencies concerning the dates of her employment on the farm, Soriano replied that she was tired from the long flight, she was hungry, and she felt imprisoned. Soriano also explained that she did not review the statement; the officer just told her to sign it.

During cross-examination, Soriano remarked that she believed the inspectors were checking her immigration file

because they questioned the validity of her green card and looked at the back of her green card. However, no concrete evidence was offered to confirm Soriano's belief.

Inspector Dibene (Dibene), one of the inspectors who questioned Soriano, testified she would accommodate a person who needed a break for water or to use the restroom. Dibene denied using threats or insults during her investigations.

Dibene identified the sworn statement taken from Soriano. Dibene described typing Soriano's answers verbatim. In the process, Dibene noted that several answers given by Soriano did not sound credible. Specifically, the S-26 code on Soriano's green card identified her as a person who obtained admission through the agriculture amnesty program. That information seemed "peculiar" in view of Soriano's other statements regarding her prior work experience. In Dibene's experience, an agricultural worker could routinely name the supervisor and the owner of the farm where she worked. In addition, the work schedule Soriano described was more suitable to employment in a business, rather than on a farm.

Dibene testified that it was her customary procedure to have an interviewee review the sworn statement for errors. If there were any errors, she would have the subject correct the errors on the statement in pen and initial the corrections. Dibene testified she would have the subject review page by page, rather than giving the completed document to the subject for signature.

During cross-examination, Dibene testified that she was familiar with A files. Dibene did not believe that the SAW program applications were co-mingled with other documents in the A file because the SAW application information was protected from disclosure. Dibene also explained that A file documents were maintained separately, and that an inspector would not possess an A file. Finally, Dibene explicitly denied assessing Soriano's A file.

The IJ did not credit Soriano's testimony that she was coerced into signing the statement or that she gave any false statements during the interview. The IJ also concluded that the information provided during the interview came from Soriano, and not from her SAW application. In turn, Soriano's responses to the questions from the investigators established that she was not a bona fide agricultural worker and did not qualify for admission under the SAW program.

The IJ ultimately ruled that due to fraud in obtaining her admission, Soriano was not a Legal Permanent Resident (LPR) and, therefore, was not eligible for cancellation of removal. Accordingly, the IJ pretermitted Soriano's application for cancellation of removal and ordered her removed. Soriano appealed the IJ's decision to the Board of Immigration Appeals (BIA) and the BIA affirmed the IJ's decision. Soriano subsequently filed a petition for review to this court, but it was dismissed as untimely. However, the BIA reissued its decision after Soriano filed a motion to re-open due to ineffective assistance of counsel, allowing Soriano to pursue this petition for review.

## II.   STANDARD OF REVIEW

"When the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (citation and internal quotations omitted). We review questions of law *de novo*. *See Rivera v. Mukasey,* 508 F.3d 1271, 1274-75 (9th Cir. 2007).

Whether the confidentiality provisions of § 1160 were violated constitutes a question of statutory interpretation, which is reviewed *de novo*. *See Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011).

Where the BIA, in an unpublished decision, interprets an ambiguous immigration statute, we give *Skidmore* deference

to the BIA's interpretation. *See Vasquez De Alcantar v. Holder*, No. 08-71427, ___ F.3d ___, 2011 WL 2163965 at *2 (9th Cir. June 3, 2011); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (describing deference to non-controlling agency rulings as dependent on the power of those rulings to persuade).

## III. DISCUSSION

Soriano contends that the INS inspectors violated the confidentiality provisions of the SAW program. *See* 8 U.S.C. § 1160(b)(6) (2001). This program provided amnesty for a large number of the undocumented alien population of agricultural workers by authorizing applications for legalization in accordance with the criteria set forth in § 1160. *See Velez v. Coler*, 978 F.2d 647, 648 & n.1 (11th Cir. 1992). One of the principal requirements was that the applicant demonstrate performance of agricultural services as an employee. *See Wint v. Yeutter*, 902 F.2d 76, 78 (D.C. Cir. 1990) (citing 8 U.S.C. § 1160 (a)(1)). This requirement underscores the significance of Soriano's denial of working on a farm. By denying having engaged in agricultural employment, Soriano called into question her eligibility for admission under the SAW program.

**[1]** A prominent feature of the SAW program is the confidentiality provision that prohibits use of information disclosed by a SAW applicant in the course of the application process. *See* 8 U.S.C. § 1160(b)(6)(A)(i). Upon realizing the significance of her statement that she had never worked on a farm, Soriano segued to her contention that the information elicited from her by the INS inspectors was confidential under the provisions of § 1160.

The BIA upheld the IJ's determination that the confidentiality provisions of § 1160 were not violated. The BIA ruled that "[a]ny notation on the respondent's permanent residency card [ ] which indicated that the respondent obtained her resi-

dency via the SAW program is not part of her confidential temporary residence application."

This issue appears to be one of first impression for us. However, the Tenth and Eleventh Circuits, as well as the United States District Court for the Southern District of California have previously applied the confidentiality provisions of § 1160. During a criminal proceeding involving the illegal acquisition of a firearm, a SAW applicant in the Tenth Circuit appealed the decision of the district court allowing his application to be used to establish that he was an illegal alien. *See United States v. Hernandez*, 913 F.2d 1506, 1508 (10th Cir. 1990). The Tenth Circuit determined that the application was admissible as evidence at trial because the reach of the confidentiality provision did not extend so far as to protect against disclosure in a criminal proceeding. The Tenth Circuit reasoned that a more "narrow reading" of the confidentiality requirement would allow disclosure of application information "in the course of verifying it" and "in the course of prosecuting an applicant for providing false information . . ." *Id.* at 1511 (citations omitted).

Similarly, in a case from the Eleventh Circuit, petitioners attempted to limit access to SAW files during a court proceeding. *See In re Nelson*, 873 F.2d 1396, 1397 (11th Cir. 1989). The Eleventh Circuit opined that it was not Congress's intent "to prohibit disclosure of SAW application files in judicial proceedings." *Id.* (citations omitted). The Eleventh Circuit explained that if Congress intended to place such a limitation on the files, it would have expressly done so. *See id.*

In *Lopez v. Ezell*, 716 F.Supp. 443, 444 (S.D. Cal. 1989), the plaintiffs filed a motion for a preliminary injunction to enjoin border patrol agents and non-legalizing INS officers from, *inter alia*, questioning applicants concerning fraud with respect to their applications. The district court turned to the plain language of the statute and interpreted it "in a logical fashion" to limit the confidentiality provision to the "applica-

tion and any information taken from the application. . ." *Id.* at 445. The district court determined that "[o]n its face, the language of section 1160(b)(6) does not extend to the information *not obtained directly from the application itself* . . ." *Id.* (emphasis added). Recognizing that the language of the statute could be deemed ambiguous, the district court also examined legislative history to ascertain the intent of the drafters. *See id.* The district court discerned from the legislative history that Congress's primary intent was to protect the application and the information contained on the application from unauthorized disclosure to other government entities. *See id.* (citing P.L. 99-603, *reprinted in* 1986 U.S. Code Cong. & Admin. News, 5649, 5677). However, the district court observed that Congress was also concerned about fraud in the application process. *See id.* (referencing § 1160(b)(6)(A)'s exemption for "the purpose of enforcing the penalty for fraud"). Having considered the plain language of the statute and the legislative history, the district court held that the confidentiality provision was not to be construed so broadly "as to completely immunize the underlying facts contained in the application from any independent inquiry." *Id.* at 447.

Although we agree with the principle espoused in *Hernandez* and *In re Nelson* that the confidentiality provision in the SAW legislation is not limitless, those cases do not provide direct guidance on the issue we decide. Those cases both involved court proceedings. *See Hernandez*, 913 F.2d at 1508; *see also In Re Nelson*, 873 F.2d at 1397. Accordingly, it could be argued that the compelling nature of court proceedings is sufficiently distinct that an exception may be made for those proceedings that would not apply in an inspection interview. *See Carmichael v. Delaney*, 170 F.2d 239, 244-45 (9th Cir. 1948) (noting the importance of judicial proceedings) .

We are more persuaded by the analysis of the district court in *Lopez* because *Lopez* involved facts that are more analogous to the facts of this case, *i.e.*, seeking to prohibit inspec-

tors from inquiring about fraud in the underlying SAW application. *See Lopez*, 716 F.Supp. at 444. As noted by the district court in *Lopez*, 8 U.S.C. § 1160(b)(6) provided in pertinent part:

> Nothing in this paragraph shall be construed to limit the use, or release, for immigration enforcement purposes or law enforcement purposes of information contained in files or records of the Service pertaining to an application filed under this section, other than information furnished by an applicant pursuant to the application, or any other information derived from the application, that is not available from any other source.

**[2]** We agree that Congress was as concerned with fraud in the application process as it was with shielding applicants from unauthorized disclosure of the SAW application contents. *See Lopez*, 716 F. Supp. at 446 (referencing the statutory provision exempting from the confidentiality provision information used to enforce the fraud penalty). Adoption of Soriano's approach would prevent any investigation of fraud that referenced any information contained in the SAW application, even if the information was not obtained from the application. We are not inclined to adopt an interpretation that patently thwarts Congress's expressed intent. *See Padash v. I.N.S.,* 358 F.3d 1161, 1168 (9th Cir. 2004) (noting that federal statutes should be interpreted in conformity with the intent of Congress).

**[3]** We also agree that the plain language of the statute counsels against a broad interpretation of the confidentiality provision. By its plain terms, the confidentiality provision applies expressly and exclusively to the application itself. *See* 8 U.S.C. § 1160(b)(6)(A). Applying the confidentiality provision to information that was not obtained from the application would violate a cardinal principle of statutory interpretation—that a statute be analyzed and applied in accordance with its

plain language. *See Infuturia Global*, 631 F.3d at 1137. In sum, we hold that an examination of the plain language of the statue and the statutory intent as expressed in the statute leads us to conclude that there is no violation of the SAW confidentiality provisions when the challenged information is obtained as the result of questioning at an inspection checkpoint rather than from the application itself.

The BIA's ruling is consistent with our conclusion. In its decision, the Board specifically found that the information the agents obtained from the notation on Soriano-Vino's permanent residency card was not part of her application. We give *Skidmore* deference to the agency's ruling because the analysis employed was fact-based, fairly thorough, and rooted in reliance on published BIA precedent. *See Skidmore*, 323 U.S. at 140 (discussing factors).

**[4]** Finally, we note that the outcome of this case is not dictated by the Board's decision in *In Re Masri*, I. & N. Dec. 1145 (BIA 1999). In *Masri*, it was undisputed that the INS procured evidence directly from the applicant's SAW application. *See id.* at 1146. Because the evidence used by the agency fell within the express prohibition of the statute's confidentiality provision, the Board held that the "clear and unequivocal" language of the statute prohibited use of information from the SAW application. *Id.* at 1150. In deciding Soriano-Vino's appeal, the BIA explicitly distinguished the circumstances that existed in *Masri*. Unlike the situation in *Masri*, it is undisputed that the inspectors who questioned Soriano did not have access to Soriano's SAW application. Rather, information was garnered from the statements provided by Soriano. Because the agents did not access Soriano's SAW application, there was no violation of the SAW confidentiality provision, and the BIA's decision so holding was correct.

**PETITION DENIED**.

ZOUHARY, District Judge:

I concur in the result. The confidentiality provision was not violated here because immigration officers obtained the challenged information from Soriano, not her SAW application.