**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ENCARNACION GONZALEZ-
VILLALOBOS,
*Defendant-Appellant*.

</td><td>

No. 12-30150

D.C. No.
2:11-cr-02095-
RMP-1


OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, Chief District Judge, Presiding

Argued and Submitted
February 8, 2013—Seattle, Washington

Filed July 26, 2013

Before: Raymond C. Fisher, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's denial of a motion to dismiss an indictment charging illegal reentry after a prior deportation without addressing the merits of the defendant's argument that the alleged prior deportation proceeding was fundamentally unfair.

The panel held that the defendant, who exhausted his administrative remedies by appealing the Immigration Judge's adverse ruling to the Board of Immigration Appeals, failed to show that an error or obstacle related to his deportation proceedings improperly deprived him of the opportunity for judicial review, as required for a collateral attack on the deportation order under 8 U.S.C. § 1326(d). The panel explained that the IJ's denial of an evidentiary hearing is not an error that, by its nature, affected the defendant's awareness of or ability to seek judicial review.

### COUNSEL

Nicholas Marchi (argued), Carney & Marchi, P.S., Seattle, Washington, for Defendant-Appellant.

Alexander C. Ekstrom, Assistant United States Attorney (argued), and Michael C. Ormsby, United States Attorney, Yakima, Washington, for Plaintiff-Appellee.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# OPINION

PAEZ, Circuit Judge:

Defendant Encarnacion Gonzalez-Villalobos appeals his conviction for illegal reentry after a prior deportation in violation of 8 U.S.C. § 1326. In the district court he moved to dismiss the indictment on the ground that the prior deportation order was fundamentally unfair. *See* 8 U.S.C. § 1326(d). After the district court denied his motion, Gonzalez-Villalobos entered a conditional guilty plea, preserving his right to appeal the denial of the motion. On appeal, he renews his challenge to the prior deportation order.

When a defendant collaterally attacks the validity of a prior deportation order in a § 1326 prosecution, he must show that he exhausted his administrative remedies, that the deportation proceedings improperly deprived him of the opportunity for judicial review, and that entry of the prior deportation order was fundamentally unfair. *See* 8 U.S.C. § 1326(d)(1)–(3). As we explain below, we have generally found that where an alien was deprived of the opportunity to exhaust his administrative remedies, satisfying § 1326(d)(1), he also has shown that he was deprived of the opportunity to seek judicial review, satisfying § 1326(d)(2). Here, Gonzalez-Villalobos has shown that he exhausted his administrative remedies by appealing the Immigration Judge ("IJ")'s adverse ruling to the Board of Immigration Appeals ("BIA"). However, he has failed to show that an error or obstacle related to his deportation proceedings improperly deprived him of the opportunity for judicial review, as required by 8 U.S.C. § 1326(d)(2). Because subsections (d)(1), (d)(2), and (d)(3) must all be satisfied either directly or constructively, we affirm the denial of Gonzalez-

Villalobos's motion to dismiss and his conviction without addressing the merits of his argument that the alleged prior deportation proceeding was fundamentally unfair.

# I.

## FACTUAL AND PROCEDURAL HISTORY

### A.

The events surrounding the underlying deportation in this case occurred more than twenty years ago.[1]  In March 1986, Gonzalez-Villalobos was arrested in Yakima, Washington, for possession of a controlled substance (cocaine) with intent to deliver.  He was eventually convicted of this offense in the Superior Court of Washington, County of Yakima, in July 1986.  In connection with Gonzalez-Villalobos's arrest, agents from the Immigration and Naturalization Service ("INS") assisted the local police with the service and execution of a search warrant at his house.[2]  A few days after

---

[1] We have recognized that "the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRIRA') amended the immigration statutes so as to eliminate the previous legal distinction between deportation, removal and exclusion, merging all of these proceedings into a broader category entitled 'removal proceedings.'" *United States v. Lopez-Gonzalez*, 183 F.3d 933, 934 (9th Cir. 1999).  We continue to use the term "deportation" in this opinion, however, to track the language of 8 U.S.C. § 1326.  *See id.* at 935 (concluding that "any distinction between deportation and removal is legally insignificant for purposes of § 1326").

[2] "As of March 2003, INS became United States Citizenship and Immigration Services, an agency within the Department of Homeland Security."  *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1013 n.1 (9th Cir. 2008).

the arrest, an INS agent prepared form I-213, "Record of Deportable Alien," in which he recorded Gonzalez-Villalobos's immigration status and the events surrounding his arrest.  The I-213 contained an A-file number ending in "910."  The next day, INS served Gonzalez-Villalobos with an order to show cause, alleging that he was deportable as an alien in the United States who entered without inspection. When INS could not locate Gonzalez-Villalobos, it administratively closed the deportation proceeding in January 1987.  As it turned out, Gonzalez-Villalobos was incarcerated in federal prison, where he was serving a sentence for being an alien in possession of a firearm.[3]  Gonzalez-Villalobos completed his federal sentence in December 1987 and upon his release he was taken into custody by INS.  A few weeks later, INS released him from custody because it determined that he was a class member in a pending class action.  The agency then cancelled the pending order to show cause.

After his release from INS custody, Gonzalez-Villalobos applied for legal status through the "special agricultural worker" ("SAW") program in May 1988. *See* 8 U.S.C. § 1160; 8 C.F.R. § 210.3.[4]  INS assigned Gonzalez-Villalobos's SAW application a different A-file number, ending in "678."  It denied his SAW application in November

---

[3] This conviction arose from the same incident as his state drug conviction.

[4] The SAW program was a program through which certain aliens who had resided in the United States and "performed seasonal agricultural services in the United States for at least 90 man-days, during the 12-month period ending on May 1, 1986" could obtain temporary legal status, which would automatically adjust to permanent resident status after a period of time.  8 U.S.C. § 1160(a); *see also Soriano-Vino v. Holder*, 653 F.3d 1096, 1099 (9th Cir. 2011); 8 C.F.R. § 210.5(a).

1989 on the ground that his state drug conviction rendered him ineligible for the program. Gonzalez-Villalobos appealed, and the INS Legalization Appeals Unit affirmed the denial of his application in February 1991. Apparently unaware of the Appeals Unit's ruling, Gonzalez-Villalobos visited an INS office in November 1991 to inquire about the status of his SAW application. While there, he was detained by INS agents, who immediately completed a second I-213, reciting Gonzalez-Villalobos's conviction record and detention history. This I-213 had the same A-file number as the one prepared in 1986, ending in "910." The next day, INS issued an order to show cause, alleging that Gonzalez-Villalobos was deportable as an alien who had been convicted of a controlled substance offense.

At a deportation hearing in April 1992, Gonzalez-Villalobos argued that INS agents wrongfully discovered his conviction record by looking through the SAW file. He argued that "when he went to check on his legalization application and the current status of it, they reviewed the computer and the file and asked him to wait there. They made a phone call and subsequently, from across the hall, where the deportation section and the legalization office are in the same building across the hall, came the agent from INS."

Gonzalez-Villalobos requested a suppression hearing so that he could question the INS agents on how they obtained his criminal history record. In response, the IJ asked the government's attorney to "assure [him] as an officer of the Court that [the evidence] did not result from a sting operation being operated by the investigative arm of the Service in conjunction with the legalization office." The government's attorney informed the court that he was not offering any

evidence that came from the SAW legalization file. The IJ then denied the request for a suppression hearing, stating that "the evidence submitted by the Service was totally independent of the legalization process." She further concluded that Gonzalez-Villalobos was not eligible for any relief and accordingly entered a deportation order. The IJ also informed Gonzalez-Villalobos and his attorney of the right to appeal her ruling to the BIA. Gonzalez-Villalobos timely appealed, primarily challenging the IJ's denial of his request for a suppression hearing.

The BIA subsequently dismissed Gonzalez-Villalobos's appeal, finding that he had not carried his burden of justifying the need for a suppression hearing. Gonzalez-Villalobos then applied for a stay of deportation, which INS denied in April 1999. The record does not reflect whether he filed a petition for review in the Ninth Circuit, but it does reflect that he filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Washington. Upon filing the petition, he sought a temporary restraining order enjoining his deportation. He was deported to Mexico, however, on April 13, 1999. Shortly afterwards, Gonzalez-Villalobos agreed to dismiss the petition and withdraw the motion.

**B.**

The events leading to Gonzalez-Villalobos's current prosecution are fairly straightforward. At some point after being deported, Gonzalez-Villalobos returned to the United States. He was located in Yakima County in July 2011, and a few weeks later, he was arrested and charged with being an alien in the United States after deportation, in violation of 8 U.S.C. § 1326. The parties agree that the 1992 deportation

order, affirmed by the BIA in 1999, was the alleged prior deportation. Gonzalez-Villalobos moved to dismiss the indictment on the ground that the 1992 deportation order was invalid because the IJ had erred in denying his motion for a suppression hearing. The district court denied the motion, finding that even if the IJ had erred in denying Gonzalez-Villalobos's motion, he could not establish prejudice. Gonzalez-Villalobos then entered a conditional guilty plea, preserving his right to appeal the district court's denial of his motion to dismiss. Following entry of the judgment and commitment order, Gonzalez-Villalobos timely appealed. He argues that the underlying deportation order was fundamentally unfair, and therefore invalid, because it was based on conviction records that the INS agents unlawfully discovered in his SAW file, and because the IJ did not grant an evidentiary hearing on how the agents obtained those records.[5]

---

[5] Gonzalez-Villalobos argues that the conviction records should have been suppressed. Although the exclusionary rule generally does not apply in civil deportation proceedings, *Martinez-Medina v. Holder*, 673 F.3d 1029, 1033 (9th Cir. 2011), it does apply where the immigration agency violates its own rules if (1) "the regulation serves a purpose of benefit to the alien," and (2) "the violation prejudiced interests of the alien which were protected by the regulation," *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979); *see also Hong v. Mukasey*, 518 F.3d 1030, 1035 (9th Cir. 2008). Here, Gonzalez-Villalobos argues that his conviction records should have been suppressed because the INS agents violated 8 U.S.C. § 1160(b)(6)(A), a statutory confidentiality guarantee for SAW applicants. At the time of the alleged violation, this provision prohibited officials from using information provided in a SAW application "for any purpose other than to make a determination on the application." 8 U.S.C. § 1160(b)(6)(A) (1991).

## II.

## STANDARD OF REVIEW

We review de novo the denial of a motion to dismiss an indictment alleging a violation of 8 U.S.C. § 1326 when the basis for the motion is an alleged due process violation in the underlying deportation proceeding. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). We review for clear error the district court's factual findings. *United States v. Camacho-Lopez*, 450 F.3d 928, 929 (9th Cir. 2006).

## III.

## ANALYSIS

In a prosecution for illegal reentry under 8 U.S.C. § 1326(a), the government must prove, *inter alia*, that the defendant was previously "denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal [wa]s outstanding." 8 U.S.C. § 1326(a)(1); *see also* 9th Cir. Model Crim. Jury Instr. 9.8 (2010). The defendant, in turn, has a due process right to collaterally attack the underlying deportation order, because it serves as a predicate element of the crime for which he is charged. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding."). Thus, "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may

be used to establish conclusively an element of a criminal offense." *Id.* at 838; *see also United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *overruled on other grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2012) (en banc) ("In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation.  If the defendant's deportation proceedings fail to provide this opportunity, the validity of the deportation may be collaterally attacked in the criminal proceeding." (citation omitted)).

A defendant who collaterally challenges the alleged deportation order must establish the following:

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; *and*
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added); *see also United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 n.4 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 322 (2012) ("Through the addition of subsection (d) to [8 U.S.C. § 1326] in 1996, Congress partially codified the Court's decision in *Mendoza–Lopez*."). We conclude that Gonzalez-Villalobos has failed to show that the deportation proceeding at which his deportation order was issued improperly deprived him of the opportunity for

judicial review, as required by 8 U.S.C. § 1326(d)(2), and therefore has not met his burden under § 1326(d).**⁶**

## A.

Although 8 U.S.C. § 1326(d)(1) and (d)(2) are separate requirements, we have generally held that where an alien is deprived of his right to appeal to the BIA, he satisfies both (d)(1) and (d)(2). This makes sense, because an alien who fails to exhaust his administrative remedies due to an error in the underlying proceedings, satisfying (d)(1), will typically also be deprived of the opportunity for judicial review, satisfying (d)(2).**⁷** *See United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) ("Effective deprivation of an alien's administrative appeal serves to deprive him of the opportunity for judicial review as well.").

The cases in which we have determined that § 1326(d)(1) and (d)(2) were satisfied can be divided into three overlapping categories. First, we have held that § 1326(d)(1) and (d)(2) are satisfied when the IJ failed to inform the alien

---

**⁶** Because we conclude that Gonzalez-Villalobos failed to carry his burden with respect to 8 U.S.C. § 1326(d)(2), we do not reach his argument that the IJ's denial of an evidentiary hearing and failure to suppress his conviction records resulted in the entry of an order that was "fundamentally unfair." *See* 8 U.S.C. § 1326(d)(3); *see also supra* note 5.

**⁷** Put another way, in such cases the defendant is excused from satisfying (d)(1) and satisfies (d)(2). *See, e.g.*, *Ubaldo-Figueroa*, 364 F.3d at 1050 (concluding that "although Ubaldo-Figueroa did not exhaust his administrative remedies by appealing his removal order to the BIA in 1998, he is exempted from the exhaustion bar because his waiver of his right to appeal was not sufficiently considered and intelligent," and as a result, he was "deprived of the opportunity for meaningful judicial review" (internal quotation marks omitted)).

that he had a right to appeal his deportation order to the BIA. *See Ubaldo-Figueroa*, 364 F.3d at 1050 ("Ubaldo-Figueroa was deprived of the opportunity for meaningful judicial review because the IJ did not inform him of his right to appeal his deportation order."); *Reyes-Bonilla*, 671 F.3d at 1045 (same).

Second, we have held that an IJ's failure to inform the alien that he is eligible for a certain type of relief also satisfies § 1326(d)(1) and (d)(2), because "an alien who is not made aware of 'his or her apparent eligibility' for relief has had no 'meaningful opportunity to appeal' the removal and seek such relief." *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013) (citations omitted); *see also United States v. Lopez-Velasquez*, 629 F.3d 894, 901 (9th Cir. 2010) (en banc) (holding that an IJ must "inform the alien of a reasonable possibility that the petitioner may be eligible for relief" (internal quotation marks omitted)).[8]  Thus, we held that § 1326(d)(1) and (d)(2) were satisfied when the IJ improperly characterized a prior conviction as an aggravated felony and erroneously informed the alien that he was ineligible for discretionary relief, *Camacho-Lopez*, 450 F.3d at 930; *Pallares-Galan*, 359 F.3d at 1103; *United States v. Leon-Paz*, 340 F.3d 1003, 1005–06 (9th Cir. 2003); when the IJ did not inform the alien that he was eligible for voluntary departure or failed to give him an opportunity to apply for

---

[8] We also have held that § 1326(d)(1) and (d)(2) are satisfied when the government, rather than the IJ, misinforms an alien that he is ineligible for relief. *United States v. Arias-Ordonez*, 597 F.3d 972, 977 (9th Cir. 2010) (considering an order to report for removal that erroneously informed the alien that "no administrative relief" was available to him, and noting that it is "well established that § 1326(d)'s requirements of exhaustion and deprivation of judicial review are satisfied when the government misinforms an alien that he is ineligible for relief").

such relief, *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012); *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 n.2 (9th Cir. 2004); and when the IJ did not inform the alien that he was eligible for relief under INA § 212(c), *Ubaldo-Figueroa*, 364 F.3d at 1049–50, or INA § 212(h), *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (not discussing (d)(1) or (d)(2) specifically, but concluding that because Arrieta was not informed of his eligibility for a § 212(h) waiver, he was denied due process and a meaningful opportunity for judicial review).

Third, when an alien has waived his right to appeal to the BIA, he can nevertheless satisfy § 1326(d)(1) and (d)(2) by showing that his waiver was not "considered and intelligent." *Reyes-Bonilla*, 671 F.3d at 1043; *see also United States v. Ramos*, 623 F.3d 672, 682 (9th Cir. 2010) (concluding that alien's "waiver of his right to appeal . . . was procedurally defective and deprived him of the opportunity for meaningful judicial review," thereby meeting his burden under 8 U.S.C. § 1326(d)(1) and (d)(2)). This category of cases often overlaps with the prior two categories, since the IJ's failure to inform an alien of his right to appeal, or his eligibility for relief, can form the basis of an invalid waiver of the right to appeal. *See, e.g.*, *Ubaldo-Figueroa*, 364 F.3d at 1048 ("Ubaldo-Figueroa's waiver of his right to appeal his removal order was not sufficiently 'considered and intelligent' because the IJ presiding over the removal proceeding failed to inform him that he had the right to appeal his removal order to the BIA."); *Pallares-Galan*, 359 F.3d at 1096 (holding that an alien's waiver of his right to appeal was not "considered and intelligent" because the IJ erroneously told him that he was ineligible for relief); *Arrieta*, 224 F.3d at 1079 ("Mr. Arrieta argues persuasively that he could not make a considered and intelligent decision about his right to

appeal because the IJ never informed him of his eligibility for a § 212(h) waiver.").[9]

## B.

Against this legal backdrop, we turn to Gonzalez-Villalobos's challenge to the validity of the 1992 deportation order. Here, unlike in the cases discussed above, we cannot resolve 8 U.S.C. § 1326(d)(1) and (d)(2) in the same stroke. Gonzalez-Villalobos has clearly satisfied 8 U.S.C. § 1326(d)(1) by showing that he appealed the IJ's decision to the BIA. But he has failed to show that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review," as required by 8 U.S.C. § 1326(d)(2). Unlike the errors discussed above, the error that Gonzalez-Villalobos alleges—the denial of an evidentiary hearing—is not an error

---

[9] We do not suggest that these are the only situations in which an alien can satisfy the requirements of 8 U.S.C. § 1326(d)(2). *See, e.g.*, *United States v. Perez*, 330 F.3d 97, 101 (2d Cir. 2003) ("Deprivation of the opportunity for judicial review can be established by demonstrating ineffective assistance of counsel, and the failure of counsel to file a § 212(c) application can constitute ineffective assistance of counsel."). *Cf. United States v. Villavicencio-Burruel*, 608 F.3d 556, 560 n.2 (9th Cir. 2010) (finding that 8 U.S.C. § 1326(d)(1) was not satisfied, and distinguishing *Perez* on the ground that "counsel [in *Perez*] stated at the deportation hearing that he 'would file' an application for relief and then failed to do so in a timely fashion without informing his client, thus failing to act as competent counsel," whereas in *Villavicencio-Burruel*, the court could not "conclude that the attorney exceeded her authority or failed to act as competent counsel by not pursuing an appeal," because the alien's attorney "reserved a right of appeal on his client's behalf, but did not state that she would file an appeal" and the record was "silent on whether Villavicencio authorized or directed his attorney to file an appeal").

that, by its nature, affected his awareness of or ability to seek judicial review.

Nor does Gonzalez-Villalobos allege an error so harmful or pervasive that it altered the course of his deportation proceedings such that he was effectively deprived of the opportunity for judicial review. This is perhaps unsurprising, given that Gonzalez-Villalobos *did*, in fact, seek judicial review. After appealing the IJ's decision to the BIA, he filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Washington, which he later dismissed. He does not argue that his ability to file the habeas petition was constrained by the alleged error at his deportation proceeding, nor does he argue that the error caused him to raise inapposite arguments in the petition or affected his decision to voluntarily withdraw the petition. Instead, Gonzalez-Villalobos asks the court to find that he was deprived of judicial review on the ground that he has a right to "meaningful review of the underlying deportation," and in the absence of prior judicial review, is entitled to it now.[10]

---

[10] In response to the court's request for supplemental briefing on whether Gonzalez-Villalobos had satisfied 8 U.S.C. § 1326(d)(2), Gonzalez-Villalobos also argued that he "[h]ypothetically . . . might have been eligible for § 212(c) relief at the time of his immigration proceedings," and the IJ's failure to advise him of such relief "may have" improperly deprived him of the opportunity for judicial review. This argument was not raised in Gonzalez-Villalobos's opening brief and is therefore waived. Even if it were not waived, Gonzalez-Villalobos has failed to identify any facts that should have alerted the IJ to the possibility that he was eligible for such relief. *See Lopez-Velasquez*, 629 F.3d at 900 ("[T]he IJ is not required to advise an alien of possible relief when there is no factual basis for relief in the record.").

We decline to adopt Gonzalez-Villalobos's argument, which is based on a misreading of *Mendoza-Lopez* and 8 U.S.C. § 1326(d)(2). In *Mendoza-Lopez*, the Supreme Court held that "*where the defects in an administrative proceeding foreclose judicial review of that proceeding*, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." 481 U.S. at 838 (emphasis added). And the requirements of 8 U.S.C. § 1326(d) likewise make clear that it is not enough for the defendant to show that "the entry of the order was fundamentally unfair," as required by (d)(3), and that he exhausted his administrative remedies, as required by (d)(1); he must *also* show that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review." *See* 8 U.S.C. § 1326(d)(2).

In other words, where the defendant has failed to identify any obstacle that prevented him from obtaining judicial review of a deportation order, he is not entitled to such review as part of a collateral attack under 8 U.S.C. § 1326(d). *See United States v. Adame-Orozco*, 607 F.3d 647, 652 (10th Cir. 2010) ("There can be no genuine dispute that [the defendant] received what process § 1326(d)(2) promises. He freely admits that he was able to (and did) appeal the IJ's deportation order to the BIA, and he identifies no impediment to his ability to appeal the BIA's decision to a federal court."); *see also United States v. Hinojosa-Perez*, 206 F.3d 832, 836 (9th Cir. 2000) (holding that § 1326(d)(2) was not satisfied where the defendant alleged a failure to provide notice of his deportation hearing, because "the doors to the courts were open to [the defendant's] lack of notice due process argument").

Although we have "interpreted [the] narrow criteria [of § 1326(d)] broadly," *Vidal-Mendoza*, 705 F.3d at 1015, where a defendant has fully exhausted his administrative remedies, we conclude that the defendant must show an actual or constructive inability to seek judicial review, related to an alleged error or obstacle in the deportation proceedings, to satisfy § 1326(d)(2).[11] Gonzalez-Villalobos has failed to do so here, and therefore has not met his burden pursuant to 8 U.S.C. § 1326(d)(2).

## IV.

## CONCLUSION

We conclude that Gonzalez-Villalobos failed to carry his burden of showing that "the deportation proceedings at which the [deportation] order was issued improperly deprived [him] of the opportunity for judicial review," and therefore his collateral attack on the underlying deportation order cannot be sustained. 8 U.S.C. § 1326(d)(2).

**AFFIRMED.**

---

[11] We do not suggest that the alleged error or obstacle in the deportation proceedings that deprived a defendant of judicial review must be the same as the alleged error or obstacle that made entry of the deportation order fundamentally unfair. A defendant could conceivably collaterally attack a prior deportation order by asserting that one defect in the prior deportation proceedings made entry of the deportation order unfair (e.g., that he was unfairly precluded from presenting evidence demonstrating his entitlement to relief) and a different obstacle or defect in the deportation proceedings deprived him of judicial review (e.g., ineffective assistance of counsel).