**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4409**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

      v.

ISIDORO GONZALEZ-FERRETIZ, a/k/a Francisco Rodriguez-Vela,

                Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Robert E. Payne, Senior District Judge.  (3:18-cr-00117-REP-1)

Submitted: March 17, 2020                Decided:  May 13, 2020

Before KEENAN and RUSHING, Circuit Judges, and Thomas E. JOHNSTON, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Johnston wrote the opinion, in which Judge Keenan and Judge Rushing have joined.

Geremy C. Kamens, Federal Public Defender, Alexandria, Virginia, Joseph S. Camden, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia for Appellant.  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Heather Hart Mansfield, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia for Appellee.

Unpublished opinions are not binding precedent in this circuit.

JOHNSTON, District Judge:

Isidoro Gonzalez-Ferretiz ("Gonzalez") was convicted of one count of illegal reentry by a removed alien. He now appeals his conviction and sentence on two grounds. First, Gonzalez argues that the district court erred in denying his motion to dismiss the indictment. Second, Gonzalez challenges the district court's application of the United States Sentencing Guidelines ("U.S.S.G.") with respect to a prior conviction. For the following reasons, we affirm.

I.

Gonzalez is a Mexican citizen. He illegally entered the United States sometime before July 22, 2008, when he was encountered in Pennsylvania by immigration authorities from the Department of Homeland Security ("DHS"). Gonzalez was offered a voluntary departure to Mexico, with which he complied. He again entered the United States illegally on some unknown date prior to an arrest in July 2012. On July 23, 2012, immigration authorities interviewed Gonzalez while in state custody, and he admitted that he had entered the United States unlawfully. No further action was taken to remove him at that time.

On June 2, 2014, Gonzalez pled guilty to theft from a motor vehicle, in violation of Pennsylvania law, 18 Pa. Code § 3934(A). Pursuant to Pennsylvania's indeterminate sentencing scheme, Gonzalez was sentenced to a minimum term of confinement of "time served 4/24/14–6/2/14" and a maximum of "23 mos." J.A. 148. Notably, the sentencing court also granted Gonzalez "immediate parole" as a "specific condition[]." *Id.*

3

The day after sentencing, the DHS initiated removal proceedings against Gonzalez by serving him with a Notice of Intent to Issue a Final Administrative Removal Order ("NOI"), also known as a Form I-851. The NOI stated that Gonzalez was removable due to his conviction of an aggravated felony as defined under 8 U.S.C. § 1101(a)(43)(G) of the Immigration and Nationality Act ("INA"). The NOI included an attachment listing Gonzalez's prior conviction for theft from a motor vehicle, in violation of Pa. Code § 18-3934(A), for which he was sentenced to a term of imprisonment of 23 months, as the basis for his removal. The NOI also contained a section explaining a charged alien's "Rights and Responsibilities," including the right to legal representation and the right to contest the charge. J.A. 149. The NOI was printed in English, and an immigration officer explained the form to Gonzalez in English. Gonzalez signed the NOI acknowledging service. In addition, he checked a box admitting the allegations in the charge and indicating that he did not contest his removal. He also checked a box waiving his right to remain in the United States for 14 days to apply for judicial review and signed below the assented waiver. A Final Administrative Removal Order issued on June 3, 2014, and Gonzalez was removed from the United States on June 19, 2014.

Sometime after his removal, Gonzalez again reentered the United States illegally and was discovered by immigration authorities. Pursuant to the 2014 removal order, he was deported to Mexico in March 2018. In September 2018, Gonzalez was again encountered by immigration authorities in Henrico County, Virginia. As a result, he was charged in a one-count indictment in the Eastern District of Virginia for illegal reentry, in violation of 8 U.S.C. § 1326(a).

4

Gonzalez filed a motion to dismiss the indictment, arguing that the underlying removal order was unlawful. The district court found after an evidentiary hearing that Gonzalez understood English at the time he completed the form and that he understood the waivers to which he assented. Gonzalez then entered a conditional guilty plea, preserving his right to appeal the motion to dismiss the indictment.

Prior to sentencing, the United States Probation Office prepared a presentence report ("PSR"). In the PSR, the probation officer determined that Gonzalez's base offense level under U.S.S.G. § 2L1.2(a) was eight. He then applied a six-level enhancement under U.S.S.G. § 2L1.2(b)(2)(C) based on Gonzalez's prior felony conviction, namely, the Pennsylvania theft from a motor vehicle conviction, for which the probation officer determined he had received a sentence exceeding one year and one month. After a two-level reduction for acceptance of responsibility, Gonzalez's offense level came to 12. His criminal history score was eight, which resulted in a criminal history category of IV. Based upon an offense level of 12 and a criminal history category of IV, Gonzalez's guidelines range was 21–24 months' imprisonment.

Gonzalez objected to the six-level enhancement and criminal history calculation, arguing that the probation officer incorrectly calculated the sentence of his prior theft offense in Pennsylvania. Specifically, Gonzalez argued that, although he was sentenced to time served to 23 months, he received immediate parole after serving five to six weeks, which constitutes a "suspended sentence" that should not be considered in calculating the guidelines range. The district court overruled the objection and, ultimately, imposed a sentence of 21 months' imprisonment. Gonzalez timely appealed.

## II.

On appeal, Gonzalez contends that the district court erred in failing to grant his motion to dismiss the indictment based on a collateral attack of the underlying removal order. He also maintains that the district court committed procedural error in applying a six-level enhancement and calculating his criminal history score based on the imposed length of a prior sentence. We address each argument in turn.

### A. Collateral Attack of Removal Order

On a motion to dismiss an indictment under 8 U.S.C. § 1326(d), we review a district court's factual findings for clear error and the court's legal conclusions de novo. *See United States v. Hosford*, 843 F.3d 161, 163 (4th Cir. 2016). In 1987, the Supreme Court recognized a due process right for an alien charged with unlawful reentry after removal under § 1326 to challenge the underlying removal order. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (explaining, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction," due process requires "*some* meaningful review of the administrative proceeding.") (emphasis in original). Thus, the Supreme Court held that where a procedural defect in an immigration proceeding forecloses judicial review of a removal order, such proceeding may not be relied on to support a subsequent criminal conviction. *See id.* at 838; *United States v. Guzman-Velasquez*, 919 F.3d 841, 845 (4th Cir. 2019).

Thereafter, Congress codified this due process requirement in 8 U.S.C. § 1326(d), which provides a limited avenue to attack a prior removal order. *See Moreno-Tapia*, 848 F.3d 162, 165–66 (4th Cir. 2017). This section provides that an alien may challenge the

6

validity of a removal order only if "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). As indicated by the statutory language, a defendant must "satisfy all three" requirements to successfully attack an underlying removal order. *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). However, an alien may be excused from meeting certain § 1326(d) requirements where the failure to do so "is itself the product of a procedural flaw in the immigration proceeding." *Moreno-Tapia*, 848 F.3d at 169; *United States v. Lopez-Collazo*, 824 F.3d 453, 459–62 (4th Cir. 2016) (excusing § 1326(d)(1) and (2)(2) requirements where language barrier prevented alien from understanding waivers contained in the I-851 form); *El Shami*, 434 F.3d at 662–64 (excusing § 1326(d) requirements and finding due process violation where alien did not receive notice of his immigration proceedings).

In Gonzalez's case, the district court ruled that he could not mount a collateral attack on his 2014 removal order. The district court reviewed the three-part standard of § 1326(d) and held that Gonzalez did not exhaust his administrative remedies and was not deprived of judicial review under requirements (1) and (2). We focus our discussion on the judicial review requirement under § 1326(d)(2).

### 1. *Opportunity for Judicial Review*

Gonzalez argues that his waivers on the I-851 form purportedly giving up any administrative or judicial review were not "considered and intelligent." Br. of Appellant

7

at 10. Notably, Gonzalez does not rely on any assertion that he could not understand English or any other claim of limited capacity to make a knowing waiver. *Cf. Mendoza-Lopez*, 481 U.S. at 840 (holding that immigration proceedings deprived alien from seeking judicial review because language barrier prevented the waivers of right to appeal to be "considered and intelligent"). Instead, he argues that, as a matter of law, his waivers were ineffective because he was unaware of his right to contest whether his underlying conviction qualified as an aggravated felony. Thus, he maintains that he is excused from satisfying the judicial review requirement under § 1326(d)(2).

Gonzalez primarily relies on *Etienne v. Lynch*, 813 F.3d 135 (4th Cir. 2015) for this proposition. In *Etienne*, however, the Court did not confront a collateral challenge to a removal order under § 1326(d). Rather, we considered our jurisdiction under 8 U.S.C. § 1252(d)(1) to review a petitioner's challenge to the designation of his underlying conviction as an aggravated felony under the INA at the time he was being deported. *Id.* at 138 (stating that an alien is required to "exhaust[] all administrative remedies available to the alien as of right" before a court has jurisdiction). We held that the exhaustion provision under § 1252(d)(1) requires a petitioner to "us[e] all steps that the agency *holds out*, and doing so *properly*." *Id.* at 141 (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)) (emphasis in original). Etienne, unlike Gonzalez, checked the box on the I-851 form indicating that he wished to contest his removal, but he did not further indicate the nature of his argument. *Id.* at 137. In considering whether Etienne exhausted all administrative remedies, we concluded that, while the expedited removal procedures and the I-851 form allowed petitioners to raise factual challenges to

8

their deportation, they do not provide an avenue to challenge the legal basis for their removal. *Id.* at 141–42. Thus, we held that Etienne "was not required to raise his legal challenge to removal in order to meet the [administrative] exhaustion requirement" necessary to invoke this Court's jurisdiction under § 1252(d)(1). *Id.* at 142.

Gonzalez's case is not like *Etienne*. For one, *Etienne* arose in a different context, concerning an appellate court's jurisdiction to review in the first instance a petitioner's challenge to his expedited deportation, while Gonzalez's case involves a challenge to the validity of the removal order that formed the basis of his criminal prosecution. Most importantly, *Etienne* involved an alien who indicated on his I-851 form that he wished to contest his removal, whereas Gonzalez plainly indicated that he waived his right to do so and consented to deportation.

Contrary to Gonzalez's argument, this Court's decision in *Etienne* does not support his assertion that he was deprived of judicial review for purposes of § 1326(d)(2). *See United States v. Segura-Virgen*, 390 F. Supp. 3d 681, 697 (E.D. Va. 2019), *aff'd*, 799 F. App'x 214 (4th Cir. 2020) (rejecting identical argument and holding that *Etienne*'s "application in the Section 1326 context is limited to, at most, the exhaustion of administrative remedies prong of Section 1326(d)(1), not to the judicial review prong of Section 1326(d)(2)."). Indeed, *Etienne* affirmatively establishes that a person in Gonzalez's circumstances may petition a court of appeals to review whether an offense is an aggravated felony in the immigration context, even when the DHS form utilized in the immigration proceedings does not allow for such a challenge. *Etienne*, 813 F.3d at 141–

9

42. But again, unlike *Etienne*, Gonzalez waived any opportunity to pursue such a petition before a court of appeals or administrative tribunal.

Relatedly, Gonzalez asserts that the *Etienne* decision establishes that he had no opportunity to challenge the designation of his prior conviction as an aggravated felony in the immigration proceedings and, therefore, is excused from exhausting any administrative remedies from his 2014 removal order under § 1326(d)(1). Assuming that proposition to be true, Gonzalez then emphasizes that the Court of Appeals for the Ninth Circuit has "generally found that where an alien was deprived of the opportunity to exhaust his administrative remedies, satisfying § 1326(d)(1), he also has shown that he was deprived of the opportunity to seek judicial review, satisfying § 1326(d)(2)." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1126 (9th Cir. 2013). Gonzalez therefore argues that, because *Etienne* excuses his failure to exhaust his administrative remedies, he also satisfies, or is excused from satisfying, the judicial review prong of § 1326(d)(2) under the *Gonzalez-Villalobos* decision.

Gonzalez's argument that the § 1326(d)(1) and (d)(2) requirements involve a single inquiry is based on an incomplete reading of *Gonzalez-Villalobos*. The Ninth Circuit recognized in *Gonzalez-Villalobos* that the analyses of § 1326(d)(1) and (d)(2) should be tethered only when a purported error in the immigration proceedings "affect[s] [the alien's] awareness of or ability to seek judicial review."[1] 724 F.3d at 1132. Here, there is nothing

---

[1] In applying this rationale, the *Gonzalez-Villalobos* court held that while an alien had exhausted his administrative remedies, he could not collaterally attack the validity of his deportation order because he had not demonstrated that an "error or obstacle related to (Continued)

about Gonzalez's immigration proceedings that affected his "awareness of or ability to seek judicial review." *Id.* Gonzales understood that he could seek judicial review in his immigration proceedings as the I-851 form clearly set forth, but he decided to forego that opportunity. Accordingly, as Gonzalez has identified no impediment to his ability to seek judicial review of his removal order, neither *Etienne* nor *Gonzalez-Villalobos* advances his argument.

In sum, the district court properly concluded that Gonzalez was not deprived of an opportunity for judicial review. Therefore, we do not need to consider whether, under the rationale provided in *Etienne*, Gonzalez was prevented from exhausting his administrative remedies to challenge whether his underlying conviction qualified as an aggravated felony.

### 2. *Jurisdiction*

Alternatively, Gonzalez maintains that he may collaterally challenge his removal order apart from the requirements under § 1326(d) as "an *ultra vires* [agency] action." Br. of Appellant at 34. In that regard, Gonzalez asserts that the immigration officer who ordered his removal exceeded his statutory authority because such an officer is authorized only to order the removal of an alien who has actually been convicted of an aggravated felony. According to Gonzalez, the Pennsylvania theft offense for which he was convicted is not an aggravated felony, and, as a result, the immigration officer "lacked subject matter jurisdiction" to order his removal. *Id.* at 34–35.

---

his deportation proceedings improperly deprived him of the opportunity for judicial review as required by 8 U.S.C. § 1326(d)(2)." 724 F.3d at 1126.

11

Gonzalez has not cited a single case to support his *ultra vires* argument in the context of a § 1326 prosecution. Instead, he cites several appellate decisions wherein courts found in the first instance that the Board of Immigration Appeals lacked jurisdiction to remove an alien where an immigration judge had not ordered removal. *See, e.g.*, *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 884–85 (9th Cir. 2003); *James v. Gonzales*, 464 F.3d 505, 514 (5th Cir. 2006); *Rhodes-Bradford v. Keisler*, 507 F.3d 77, 80 (2d Cir. 2007); *Munoz Erazo v. United States*, 506 F. App'x 938, 944 (11th Cir. 2013); *Anderson v. Holder*, 673 F.3d 1089, 1094 (9th Cir. 2012). Critically, these cases are distinct because the jurisdictional challenges were raised on direct petitions for review. Again, Gonzalez waived his right to apply for judicial review. Thus, these cases have no application here. More fundamentally, these cases highlight the differences between an agency with authority to act, but which acts based on factual or legal errors, and a governmental body with no authority to act at all. Only the latter is *ultra vires*.

The Court finds Gonzalez's *ultra vires* argument unpersuasive for the reasons set forth in *United States v. Cortez*, 930 F.3d 350 (4th Cir. 2019). There, the parties assumed that a successful challenge to the immigration court's subject matter jurisdiction would allow for a collateral attack of the removal order. *Id.* at 356. We rejected this notion, explaining that "there is no freestanding rule allowing for collateral attacks based on a lack of subject matter jurisdiction," and a jurisdictional assertion "is not meaningfully distinct from a more routine claim that an immigration court has misconstrued the INA[,]" subject to the § 1326(d) requirements. *Id.* at 357–58. Although the *ultra vires* assertion was addressed in dicta, the reasoning set forth in *Cortez* is convincing and applicable to

12

Gonzalez's identical claim here. Whether based on an official's authority to act or an incorrect application of that authority, a collateral challenge to a removal order cannot skirt the requirements of § 1326(d). Accordingly, Gonzalez must satisfy § 1326(d)'s criteria to proceed with a collateral challenge to his removal order.

### B. Sentencing Guideline Calculation

Next, we turn to Gonzalez's argument that the district court committed procedural error in applying the sentencing guidelines. In assessing a district court's application of the sentencing guidelines, "we review factual findings for clear error and legal conclusions de novo." *United States v. Savage*, 885 F.3d 212, 225 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 238, 202 L. Ed. 2d 160 (2018). "[C]lear error occurs when a district court's factual findings are against the clear weight of the evidence considered as a whole." *United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015) (citations and internal quotation marks omitted). Under the clear error standard, we will only reverse if we are "left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

Gonzalez maintains that the district court erred in attributing three criminal history points under U.S.S.G. § 4A1.1(a) and a six-level enhancement under U.S.S.G. § 2L1.2(b)(2)(C) for his prior Pennsylvania conviction for which he was sentenced to a minimum of approximately five to six weeks for time served to a maximum of 23 months, with immediate parole. Section 4A1.1(a) provides that three criminal history points must be added "for each prior sentence of imprisonment exceeding one year and one month." In addition, § 2L1.2(b)(2)(C) requires that six points be added to the base offense level for each prior felony conviction for which the sentence imposed exceeded one year and one

13

month.  The commentary to § 2L1.2 explains that the phrase "sentence imposed" has "the meaning given the term 'sentence of imprisonment' in Application Note 2 and subsection (b) of § 4A1.2."  U.S.S.G. § 2L1.2, n.2.

Gonzalez relies on U.S.S.G. § 4A1.2(b)(1), which reads that a "'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed."  Section 4A1.2(b)(2) continues by stating, "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended."  Thus, any suspended portion of a sentence at the time of judgment does not count in determining criminal history points or a specific offense enhancement.

Pertinent here, the commentary to § 4A1.2 provides that, in applying this section to an indeterminate sentence, the "maximum sentence imposed" is the high end of the sentence range.  *See* U.S.S.G. § 4A1.2, n.2 ("[I]n the case of an indeterminate sentence of one to five years, the stated maximum is five years.").  The commentary also explains that "criminal history points are based on the sentence pronounced, not the length of time actually served."  *Id.*

Gonzalez contends that immediate parole, when ordered by a sentencing court, "functionally" qualifies as a suspended sentence under Pennsylvania law for purposes of the guidelines.[2]  Gonzalez argues that because the sentencing court ordered him to

---

[2] According to Gonzalez, a suspended sentence is governed by who makes the sentencing decision, not the language stated in the judgment order.  Specifically, Gonzalez contends that, under Pennsylvania law, where an administrative agency decides to release an offender, the sentence constitutes parole, but where the sentencing court makes the decision to release an offender, the sentence is deemed suspended.

14

immediate parole after serving five to six weeks, there was no possibility that he would serve 23 months in prison. Thus, he asserts that his sentence of confinement for time served to 23 months, with immediate parole, is neither "a conviction for a felony offense . . . for which the sentence imposed exceeded one year and one month" under U.S.S.G. § 2L1.2(b)(2)(C) nor a "sentence of imprisonment exceeding one year and one month" under U.S.S.G. § 4A1.1(a). He submits that, under the guidelines, his sentence should have been calculated to include only his time served, being approximately five to six weeks. The district court disagreed, finding that Gonzalez's Pennsylvania sentence was indeterminate, "from time served at the low end to 23 months on the high end, and that was the sentence that was actually imposed." J.A. 276–78. The district court reasoned that the imposed maximum should be used in calculating the guideline range, and that, although Gonzalez received immediate parole, the sentencing court did not order the sentence suspended.

In reaching this conclusion, the district court rejected Gonzalez's reliance on *United States v. Tabaka*, 982 F.2d 100 (3d Cir. 1992). In *Tabaka*, the defendant was sentenced in Pennsylvania to a minimum of 48 hours to a maximum of 15 months for driving under the influence. *Id.* at 101. The "state judge entered an order stating that 'the sentence as to imprisonment as above set forth be suspended during good behavior and the Defendant is placed on Parole for the unexpired portion of the maximum term." *Id.* The Third Circuit found that this language explicitly imposed a suspended sentence for all but 48 hours and, accordingly, the enhancement for a maximum penalty exceeding one year and one month was not applicable. *Id.* at 102–03.

15

The district court properly concluded that the present case is more in line with *United States v. Holmes*, 600 F. App'x 853 (3d Cir. 2015) (considering on plain error review a Pennsylvania court's imposition of sentence). There, the defendant argued, as Gonzalez does here, that "immediate parole is the functional equivalent of a suspended sentence." *Id.* at 856. The Third Circuit rejected this argument, concluding there was no precedent to support the defendant's assertion. *Id.* The district court also cited this Court's decision in *United States v. Jenkins*, 198 F.3d 238, 1999 WL 798880, at *1 (4th Cir. Oct. 7, 1999) (unpublished table decision) (affirming a district court's assignment of three criminal history points for a Pennsylvania conviction that resulted in sentence of nine days to 23 months, with immediate parole ordered after serving the minimum nine days).

The district court's conclusion was correct. The guideline's commentary explains that "criminal history points are based on the sentence *pronounced*, not the length of time actually served." § 4A1.2, n.2 (emphasis added). Gonzalez cites no authority that rejects this guidance and holds, to the contrary, that the functional effect of a sentencing order, rather than the language used in the sentencing judgment, defines a suspended sentence under the guidelines. Instead, Gonzalez cites cases that merely stand for the proposition that the term "suspended sentence" under the guidelines refers only to court ordered suspensions as opposed to administrative agency ordered suspensions. *See, e.g., United States v. Rodriguez-Bernal*, 783 F.3d 1002, 1004–05 (5th Cir. 2015) (holding that "[o]nly a court can suspend a sentence for purposes of the § 4A1.2(b)(2) exception."); *United States v. Garcia-Gomez*, 380 F.3d 1167, 1173 (9th Cir. 2004) (holding that the unserved portion of a sentence was not suspended for purposes of § 4A1.2(b)(2) because the decision

16

to release was not made by the sentencing judge); *United States v. Hernandez*, 27 F. App'x 36, 39 (2d Cir. 2001) (per curiam) (holding that "suspension" under the guidelines "refers to the judicial authority of a court"). These cases do not establish, as Gonzalez suggests, that immediate parole, when ordered by a sentencing court, constitutes a suspended sentence under Pennsylvania law. Accordingly, any reliance on these cases is misplaced.

The Court of Appeals for the Third Circuit recently rejected an identical argument based on Pennsylvania's distinctions between parole and suspension. *See United States v. Parsons*, 664 F. App'x 187, 192 (3d Cir. 2016) (emphasizing that, "even though a defendant may serve the same amount of time under a suspended sentence and a sentence with immediate parole," parole and suspension are not the same); *see also United States v. Frias*, 338 F.3d 206, 211 (3d Cir. 2003) (explaining that, under Pennsylvania law, "parole is not equivalent to other actions, such as suspension, that result in a shorter sentence served"); *Commonwealth v. Filius*, 499 A.2d 1078, 1079 (Pa. Super. Ct. 1985) (making distinction between immediate parole and suspended sentence); *cf. Fleegle v. Commonwealth*, 532 A.2d 898, 899 (Pa. Commw. Ct. 1987) (explaining that "[p]arole is a conditional release from sentence[,]" while "[p]robation is a suspended sentence of incarceration served upon such terms and conditions as imposed by the sentencing court" (citations omitted)). In Gonzalez's case, the sentencing court's order plainly imposed "immediate parole," not a suspended sentence. Although there appears to be no available box to check for a "suspended sentence" in the judgment order, Gonzalez offers no binding precedent, nor is this Court aware of any, to show that courts in Pennsylvania are not permitted to issue suspended sentences. We, therefore, conclude that the district court

properly calculated Gonzalez's offense level and criminal history score based on the imposed maximum indeterminate sentence of 23 months.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.