**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Humberto GONZALEZ–FLORES, Defendant–Appellant.**

No. 14–50067.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2015.

Filed June 8, 2015.

Amended Oct. 13, 2015.

Michael A. Marks, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Scott T. Jones (briefed and argued) and Mark R. Rehe (briefed the petition for rehearing), Assistant United States Attorneys; Laura E. Duffy, United States Attorney; Peter Ko, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, San Diego, CA, for Plaintiff–Appellee.

Before: MICHAEL J. MELLOY,* JAY S. BYBEE, and SANDRA S. IKUTA, Circuit Judges.

Order; Opinion by Judge IKUTA.

## ORDER

The opinion filed on June 8, 2015, and published at 788 F.3d 1094, is hereby amended as follows:

---

* The Honorable Michael J. Melloy, Senior Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

On page 1099, in the first full paragraph, <We deem the IJ to have breached its obligation> should be replaced with <We have applied this obligation outside of the context of an alien's application for lawful permanent resident status, *see Vidal–Mendoza*, 705 F.3d at 1015, and we deem the IJ to have breached its obligation>.

On pages 1100–1101, the three paragraphs beginning <As a threshold matter> and ending <and reached a conclusion on his application.> should be removed. In the following paragraph, <But even if the IJ's detailed colloquy> should be replaced with <We need not decide whether the IJ adequately informe Gonzalez–Flores of his eligibility for voluntary departure, because even if the IJ's detailed colloquy>. The paragraph break should be removed from before the sentence beginning <We need not decide whether>, and a paragraph break should be added before the sentence beginning <Applying our two-part test for prejudice>.

With these amendments, the petition for panel rehearing is **DENIED**. Judge Bybee and Judge Ikuta voted to deny the petition for rehearing en banc and Judge Melloy so recommended. The petition for rehearing en banc was circulated to the judges of the court, and no judge requested a vote for en banc consideration.

The petition for rehearing and the petition for rehearing en banc are **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

---

1. Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

2. The government asserts that the sentence was 240 days, but this factual dispute does not affect our analysis.

## OPINION

IKUTA, Circuit Judge:

Humberto Gonzalez–Flores appeals from the district court's denial of his motion to dismiss an information charging him under 8 U.S.C. § 1326 with being an alien found in the United States after he was removed in 2004. We affirm. Gonzalez–Flores may not bring a collateral attack against the removal order underlying his conviction because any error at the 2004 removal proceedings was not prejudicial. *See* 8 U.S.C. § 1326(d)(3); *United States v. Vidal–Mendoza*, 705 F.3d 1012, 1015–16 (9th Cir.2013).

### I

Gonzalez–Flores, a citizen of Mexico, entered the United States illegally in 1999. He was 15 years old at the time of entry. He began attending high school, but dropped out after the eleventh grade to start working. He worked for several years at Los Angeles International Airport loading food onto passenger planes. On November 4, 2004, he was convicted of robbery in violation of California Penal Code § 211[1] and was sentenced to 210 days in county jail.[2] He had two prior misdemeanor convictions: in 2004, he was convicted of driving without a license, and in 2001, he was convicted of loitering in a public park after hours.[3]

In November 2004, after his robbery conviction, Gonzalez–Flores was placed in removal proceedings. He appeared pro se

---

3. Gonzalez–Flores disputes that he was convicted of loitering in the park. Because the district court did not resolve this dispute, we do not rely on this misdemeanor conviction for our analysis.

at a hearing before an immigration judge (IJ) on December 29, 2004. During the hearing, the IJ asked Gonzalez–Flores a series of questions to draw out information relating to his eligibility for immigration relief. The IJ first asked whether Gonzalez–Flores was married or had children, and whether his parents were United States citizens or lawful permanent residents. Gonzalez–Flores answered "no" to these questions. The IJ then asked whether Gonzalez–Flores's parents were born, lived in, and were citizens of Mexico. Gonzalez–Flores answered "yes." In response to further questions, Gonzalez–Flores stated that no one had ever filed a petition on his behalf so he could immigrate to the United States, and that he was not a permanent resident of the United States. Gonzalez–Flores also agreed with the IJ's statement that Gonzalez–Flores came into the United States for the first time in 1999. The IJ then confirmed that Gonzalez–Flores had been convicted of robbery and sentenced to 210 days in jail.

After the IJ asked Gonzalez–Flores if there was any other information he wanted to tell the court and Gonzalez–Flores said "no," the IJ explained his conclusion:

> Then, sir, then the court does find that you'll be removed from the United States to Mexico based on the charges contained in the notice to appear. He's not eligible for any relief or any other benefits under the immigration laws.

> Specifically, he's not eligible for cancellation of removal because he does not have the requisite ten years residence or the family ties to be eligible for that form of relief.

> He's not eligible for adjustment of status because no petition has been filed on his behalf to allow him to adjust status. And as for voluntary departure, I'm not [going to] grant that form of relief. The

respondent's been convicted of a crime of violence as well as a crime of theft: robbery. I'm [going to] find that negative ... that negative aspect is enough to· overcome the, um, positive aspects that the respondent has in this case, which are very few except for those normally associated with any residence of any duration. So I'm not [going to] grant voluntary departure as a matter of discretion.

> As for any claim to citizenship, he indicated his parents were born in Mexico, live in Mexico, and are citizens of Mexico, as were his grandparents. So he does not derive any benefits through his family, and he·has no fear of persecution or torture if he goes back to Mexico. So there being no other relief available to him, it is the order of the court that he be removed from the United States to Mexico based on the charges contained in the notice to appear.

In response to further questions, Gonzalez–Flores stated he understood and accepted the IJ's decision, and did not wish to appeal it. Accordingly, the IJ ordered him removed.

Following his removal in 2004, Gonzalez–Flores illegally reentered the United States in 2008. The government reinstated his removal order, and removed him again on February 29, 2008. In April 2013, he made a third illegal entry and was arrested near the border between Mexico and the United States. The government charged him with being an alien found in the United States after removal, in violation of 8 U.S.C. § 1326. He moved to dismiss the information under § 1326(d), claiming his 2004 removal order was invalid because the IJ had violated his due process rights by failing to inform him that he might be eligible for voluntary departure. The district court denied the motion on the ground that no due process viola-

tion occurred, and even if there had been such a violation, Gonzalez–Flores suffered no prejudice. Gonzalez–Flores later pleaded guilty to the § 1326 violation in a plea agreement. The plea agreement included an appeal waiver, but Gonzalez–Flores retained the right to bring this appeal of the district court's denial of his motion to dismiss the information. We have jurisdiction over his appeal under 28 U.S.C. § 1291.

## II

■ We review de novo a district court's denial of an alien's collateral challenge to a prior deportation order under 8 U.S.C. § 1326(d). *United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1053 (9th Cir. 2003).

As originally enacted, § 1326 did not permit collateral attacks on a prior order of deportation. *United States v. Mendoza–Lopez*, 481 U.S. 828, 837, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). In response to the Supreme Court's determination that imposition of criminal penalties based on a prior administrative proceeding violated due process unless there was *"some* meaningful review of the administrative proceeding," *id.* at 837–38, 107 S.Ct. 2148, Congress added § 1326(d), *see United States v. Arias–Ordonez*, 597 F.3d 972, 976 (9th Cir.2010). As required by *Mendoza–Lopez*, this section gives a defendant the opportunity to challenge the validity of a prior deportation order in a criminal proceeding arising under § 1326. An alien bringing such a collateral attack is re-

quired to prove that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

■ In applying § 1326(d), our cases generally focus on a single type of defect in a deportation hearing: the IJ's failure to comply with 8 C.F.R. § 1240.11(a)(2). *See, e.g., Vidal–Mendoza*, 705 F.3d at 1015. Under § 1240.11(a)(2), if an alien seeking lawful permanent resident status applies to the IJ for a waiver of a ground of inadmissibility, the IJ "shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing." 8 C.F.R. § 1240.11(a)(2).[4] We have applied this obligation outside of the context of an alien's application for lawful permanent resident status, *see Vidal–Mendoza*, 705 F.3d at 1015, and we deem the IJ to have breached its obligation to inform an alien of "apparent eligibility" when the IJ either fails to give the alien any information about the existence of relief for which the alien is "apparently eligible," *see United States v. Lopez–Velasquez*, 629 F.3d 894, 901 (9th Cir.2010); *United States v. Ortiz–Lopez*, 385 F.3d 1202, 1204 (9th Cir.2004); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000), or when the IJ erroneously tells the alien that no relief is possi-

---

4. 8 CFR § 1240.11(a)(2) provides:
 (2) In conjunction with any application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge, if the alien is inadmissible under any provision of section 212(a) of the Act, and believes that he or she meets the eligibility requirements for a waiver of the ground of inadmissibility, he or she may

apply to the immigration judge for such waiver. The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing, in accordance with the provisions of § 1240.8(d).

ble, *see Arias–Ordonez*, 597 F.3d at 977; *see also United States v. Camacho–Lopez*, 450 F.3d 928, 930 (9th Cir.2006); *United States v. Pallares–Galan*, 359 F.3d 1088, 1096 (9th Cir.2004); *United States v. Leon–Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003). An IJ may also breach this regulatory obligation by stating that the alien is eligible for relief, but immediately negating that statement so that "it is as if he was told that he did not qualify for this relief," which puts the alien in the same position as one who is never "made aware that he has a right to seek relief." *United States v. Melendez–Castro*, 671 F.3d 950, 954 (9th Cir.2012) (per curiam) (quoting *Arrieta*, 224 F.3d at 1079). Because an alien is entitled to the procedure set forth in 8 C.F.R. § 1240.11(a)(2) (as we have construed it), we have concluded that an IJ's failure to comply with this procedure violates the alien's right to procedural due process. *See United States v. Muro–Inclan*, 249 F.3d 1180, 1183–84 (9th Cir. 2001).

 For purposes of § 1326(d), the IJ's non-compliance with § 1240.11(a)(2) relieves the alien of the burden of proving exhaustion of administrative remedies under § 1326(d)(1) because "we deem the alien's waiver of the right to an administrative appeal to have been insufficiently considered and intelligent." *Vidal–Mendoza*, 705 F.3d at 1015 (internal quotation marks omitted). The IJ's regulatory error also proves that the alien was improperly deprived of the opportunity for judicial review pursuant to § 1326(d)(2), because "an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *Arrieta*, 224 F.3d at 1079. Finally, if the IJ's error was prejudicial to the alien, then the alien can establish that the removal order "was fundamentally unfair" for pur-

poses of 8 U.S.C. § 1326(d)(3). *Vidal–Mendoza*, 705 F.3d at 1016. To prove prejudice, an alien seeking a discretionary form of relief must make a "plausible showing" that an IJ presented with all of the facts would exercise discretion in the alien's favor. *United States v. Rojas–Pedroza*, 716 F.3d 1253, 1263–64 (9th Cir. 2013). "[T]he defendant bears the burden of proving prejudice under § 1326(d)(3)." *United States v. Valdez–Novoa*, 780 F.3d 906, 916–17 (9th Cir.2015).

 We employ a two-step process for determining whether an alien claiming apparent eligibility for voluntary departure has made this showing. *Rojas–Pedroza*, 716 F.3d at 1263. First, we consider the positive and negative factors an IJ would consider relevant to an exercise of discretion. *See id.* at 1264–65. Positive factors include "long residence, close family ties to the United States, and humanitarian needs." *Id.* at 1265. Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* (quoting *Matter of Arguelles–Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999)).

 Second, we determine whether, in light of these factors and the circumstances of the alien's case, the alien carried the burden of proving "it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* at 1263 (internal quotation marks omitted). "[E]stablishing 'plausibility' requires more than establishing a mere 'possibility.'" *United States v. Barajas–Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). In assessing whether the alien carried this burden, we "focus on whether

aliens with similar circumstances received relief." *Rojas–Pedroza,* 716 F.3d at 1263. "[T]he existence of a single case that is arguably on point means only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure. That is plainly insufficient...." *Valdez–Novoa,* 780 F.3d at 920–21.

## III

■ We now turn to the facts of this case, and consider whether Gonzalez–Flores can bring a collateral attack on his prior deportation order under § 1326(d). Gonzalez–Flores claims that he satisfies the three requirements for bringing such a collateral attack because the IJ failed to inform him of his "apparent eligibility to apply for" voluntary departure. *See* 8 C.F.R. § 1240.11(a)(2). We need not decide whether the IJ adequately informed Gonzalez–Flores of his eligibility for voluntary departure because, even if the IJ's detailed colloquy with Gonzalez–Flores fell short of the requirements of § 1240.11(a)(2), Gonzalez–Flores suffered no prejudice from any such error, and therefore cannot demonstrate that the entry of the removal order was "fundamentally unfair" for purposes of § 1326(d)(3). *See Rojas–Pedroza,* 716 F.3d at 1266–67.

Applying our two-part test for prejudice, we first consider the positive and negative factors that are relevant to the IJ's exercise of discretion. Here, Gonzalez–Flores's positive equities are minimal: he lived in the United States for five years, he attended high school from age 15 through the eleventh grade, and he held a job for a few years from when he left high school until he committed a robbery. Although the IJ was not informed of Gonzalez–Flores's high school attendance and work history, these additional facts do not contradict the IJ's conclusion that Gonzalez–

Flores's equities were "very few except for those normally associated with any residence of any duration." Because none of Gonzalez–Flores's family members were United States citizens or lawful permanent residents, and because he resided in the United States for only five years, he lacked close family ties to the United States or a long residence here, the most typical favorable equities deemed important in other cases. *See Arguelles–Campos,* 22 I. & N. Dec. at 817. On the other hand, his negative equities are significant. He was convicted of robbery, which the IJ described as "a crime of violence as well as a crime of theft," for which he was sentenced to 210 days in jail, plus probation. He was also convicted of a prior misdemeanor.

Second, we consider whether Gonzalez–Flores has carried his burden of showing that "aliens with similar circumstances received relief." *See Rojas–Pedroza,* 716 F.3d at 1263. The Ninth Circuit cases identified by Gonzalez–Flores involve aliens who had far more significant positive equities, even though they also had more significant negative equities. Gonzalez–Flores has pointed to no case in which an alien with so few positive equities has been granted relief. In *United States v. Alcazar–Bustos,* we held that it was plausible a defendant would be granted voluntary departure where the defendant had lived in the United States since he was two months old and had a United States citizen wife and child, even though the defendant's criminal history included firearm possession convictions, and showed association with gang members and prior drug use. 382 Fed.Appx. 568, 569–71 (9th Cir. 2010). Likewise, in *United States v. Vasallo–Martinez,* we held it was plausible a defendant would be granted voluntary departure where the defendant resided in the United States for 21 years, had a United

States citizen wife and child, and owned a business, because these positive equities outweighed the defendant's four convictions for driving under the influence and three unrelated misdemeanors. 360 Fed. Appx. 731, 732–33 (9th Cir.2009).

Gonzalez–Flores has also identified opinions in which the BIA held that an alien was entitled to voluntary departure, but each of those cases similarly involved aliens with significant positive equities. In *Matter of Gonzales–Figeroa,* the BIA upheld a grant of voluntary departure where the alien had lived in the United States for fifteen years, had a pending visa petition filed by his lawful permanent resident mother, and his sister and two nieces were United States citizens. 2006 WL 729784, at *1–2 (BIA Feb. 10, 2006). Although the alien in that case had four assault convictions and a conviction for resisting arrest, the BIA credited the alien's testimony that the convictions were the result of a drinking problem, and that he no longer drank after successfully completing a rehabilitation program. *Id.* at *1. Similarly, in *Matter of Hernandez–Garcia,* the BIA reversed a denial of voluntary departure where the alien had a United States citizen wife and child, even though the alien had impersonated a United States citizen in order to procure a passport. 2012 WL 1705671, at *1 (BIA Apr. 11, 2012); *see also Matter of Pineda–Castellanos,* 2005 WL 3833024, at *1–2 (BIA Nov. 16, 2005) (affirming an IJ's grant of voluntary departure to an alien with a lawful permanent resident wife and three children, but indicating that such relief was barely warranted given the negative equities of six criminal convictions). By contrast, the BIA affirmed a denial of voluntary departure where the alien was arrested twice for driving on a suspended license and once for a DUI, despite the alien's family ties to the United States. *Matter of Posadas–Posadas,* 2012 WL 371659, at *1–2 (BIA Jan. 18, 2012).

As these cases illustrate, Gonzalez–Flores has failed to carry his burden of showing that aliens with his scant positive equities received relief. *See Rojas–Pedroza,* 716 F.3d at 1263. In fact, Gonzalez–Flores has failed to identify even a single case on point, which in any event would be insufficient on its own. *See Valdez–Novoa,* 780 F.3d at 920–21.

■ Because Gonzalez–Flores has failed to carry his burden of showing a grant of relief was "plausible," he has not demonstrated that any error on the part of the IJ in informing him of the availability of voluntary departure prejudiced him. *See id.* at 921. A removal order is "fundamentally unfair" for purposes of § 1326(d)(3) only if the alien "suffered prejudice as a result of the defects" in the deportation proceeding, *United States v. Ubaldo–Figueroa,* 364 F.3d 1042, 1048 (9th Cir.2004) (internal quotation marks omitted), and therefore Gonzalez–Flores has not demonstrated that he satisfied this requirement. Because Gonzalez–Flores has not met all of the requirements of § 1326(d), he may not collaterally attack his deportation order.

**AFFIRMED.**