OPINION
FERNANDEZ, Circuit Judge:
Raul Guzman-Ibarez appeals his conviction and sentence for illegal reentry after deportation or removal. See 8 U.S.C. § 1326. Specifically, he asserts that his indictment should have been dismissed by the district court because he was denied due process at his deportation hearing on August 25, 1999, which precludes use of the deportation order in a criminal pro *1097 ceeding. See id. § 1326(d). We vacate his conviction and sentence and remand.

BACKGROUND

Guzman was born in Mexico, but came to the United States in 1979, when he was about six years old. He became a Legal Permanent Resident (“LPR”) on July 13, 1989. He was far from being a perfect peregrine; rather, he committed numerous crimes and on December 21, 1995, a deportation proceeding was initiated against him. Undeterred, he committed a robbery in California, was convicted of first degree robbery[1] on February 14, 1997, and was sentenced to four years’ imprisonment as a result. Because state criminal proceedings necessitated a delay in the deportation proceeding, it was administratively closed in 1997. Guzman served his term, and the deportation proceeding was reopened. On August 12, 1999, the robbery conviction was added to the charges supporting his deportation. On August 25, 1999, the immigration judge (IJ) found that he was deportable as an alien convicted of an aggravated felony (8 U.S.C. § 1227(a)(2)(A)(iii)) and a firearm offense (8 U.S.C. § 1227(a)(2)(C)), and that he was ineligible for discretionary relief based upon his robbery conviction. Guzman waived his right to appeal. He was deported.[2]
Guzman paid no more attention to the laws of the United States than he paid to the laws of the State of California; he reentered and was deported again in 2000, 2002, 2004 and 2010 based on the initial 1999 deportation. But ours is a patient polity, and it was not until Guzman was found here in July of 2012 that the current criminal proceeding was commenced against him for violation of 8 U.S.C. § 1326(a).
Guzman moved to dismiss the indictment on the basis that his due process rights had been violated in the 1999 deportation proceeding because he had not been informed of the availability of potential discretionary relief under the provisions of 8 U.S.C. § 1182(c) (Immigration and Nationality Act (“INA”) § 212(c)), and 8 U.S.C. § 1182(h) (INA § 212(h)). The district court denied the motion, found Guzman guilty of the offense charged, and sentenced him to imprisonment for 33 months. This appeal followed.

JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.
We review de novo a collateral attack on a prior deportation order in a prosecution under 8 U.S.C. § 1326. See United States v. Vidal-Mendoza, 705 F.3d 1012, 1014 (9th Cir.2013). We may affirm the district court’s denial of a motion to dismiss an indictment on any basis supported by the record. See United States v. Davis, 336 F.3d 920, 922 (9th Cir.2003).

DISCUSSION

The parties agree that if neither the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (“AEDPA”) nor the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009-546 (“IIRIRA”) had. been enacted, Guzman would not have stood convicted of an aggravated felony under the law as it previously existed[3] and would have been *1098 entitled to consideration for waiver of deportation.[4]
Thus, as is true of the situation of many LPRs, timing in this case is everything. To briefly recapitulate the timeline here: deportation proceedings commenced December 21, 1995; the AEDPA was enacted April 24,1996;[5] IIRIRA was enacted September 30, 1996;[6] Guzman was convicted and sentenced for first degree robbery February 14, 1997; Guzman was ordered deported August 25, 1999. Guzman’s motion to dismiss the indictment depends upon his ability to challenge the validity of his deportation order. That is constrained by the provisions of 8 U.S.C. § 1326(d).
Essentially, when the IJ violates the “duty under [8 C.F.R.] § 1240.11(a)(2) to inform the alien of his or her apparent eligibility to apply for certain discretionary relief [, that] may be the centerpiece of a collateral challenge under § 1326(d).” Vidal-Mendoza, 705 F.3d at 1016 (internal quotation marks omitted); see also 8 C.F.R. § 240.11(a)(2) (1999). More specifically, in order to challenge a removal order in a proceeding under § 1326, a defendant must first demonstrate that he “exhausted any administrative remedies that may have-been available to seek relief against the order.” Id. § 1326(d)(1). Where, as here, a defendant contends that “the IJ has failed to provide information about apparent eligibility for relief, we excuse the alien from demonstrating that the alien exhausted any administrative remedies that may have been available.” Vidal-Mendoza, 705 F.3d at 1015 (internal quotation marks omitted). Next, a defendant must demonstrate that the deportation proceedings in which the order was issued improperly “ ‘deprived [him] of the opportunity for judicial review.’ ” Id.; see also 8 U.S.C. § 1326(d)(2). An IJ’s failure to inform an alien regarding apparent eligibility for relief deprives the alien of the opportunity for judicial review. See Vidal-Mendoza, 705 F.3d at 1015. Finally, a defendant must demonstrate that “the entry of the order was fundamentally unfair.” 8 U.S.C. § 1326(d)(3). An underlying deportation order is fundamentally unfair if: (1) the defendant’s “due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.” See Vidal-Mendoza, 705 F.3d at 1015-16 (internal quotation marks omitted).
Guzman asserts that the IJ did, indeed, fail to properly advise him regarding his eligibility for relief. He also' argues that the IJ’s basis for finding him deportable was fundamentally flawed.
(A) Aggravated Felony
Guzman asserts for the first time on appeal that his due process rights were violated because his first degree robbery conviction did not qualify as an “aggravated felony” when his immigration proceedings began in 1995, and therefore the IJ erred in finding him deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on that offense.[7] We disagree.
Because he did not raise that specific issue before trial or show good cause for not having done so, we would normally treat the issue as waived. See Fed.R.Crim.P. 12(b)(3), (c)(3); United States v. Anderson, 472 F.3d 662, 669-70 (9th Cir.2006); United States v. Murillo, 288 F.3d *1099 1126, 1135 (9th Cir.2002). However, because the issue is basically a pure issue of law and, more importantly, because we must consider the aggravated felony question in any event, we will review the issue. See United States v. Flores-Montano, 424 F.3d 1044, 1047 (9th Cir.2005) (per curiam).
When the proceeding against Guzman commenced in 1995, a theft offense, like robbery, was an aggravated felony if the term of imprisonment imposed upon the defendant was at least five years. See 8 U.S.C. § 1101(a)(43)(G) (1995). Under that provision, his robbery conviction would not constitute an aggravated felony because he was sentenced to a term of four years. However, before he pled guilty to the robbery offense, IIRIRA § 321(a) made theft offenses aggravated felonies so long as the defendant was sentenced to one year or more in prison, rather than five years or more. See 8 U.S.C. § 1101(a)(43)(G) (1996). That new definition applies to convictions “before, on, or after the date of enactment.” IIRIRA § 321(b). Moreover, as we have previously determined, the new definition applies when an IJ takes action “on or after the date of the enactment.” Id. at (c); see also Park v. INS, 252 F.3d 1018, 1025 (9th Cir.2001) overruled on other grounds by Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1127 (9th Cir.2006) (en banc); Ortiz v. INS, 179 F.3d 1148, 1155-56 (9th Cir.1999); Valderrama-Fonseca v. INS, 116 F.3d 853, 854-56 (9th Cir.1997).[8] As we have said: “‘actions taken’ refers to orders and decisions issued against an alien by the Attorney General acting through the BIA or Immigration Judge. This makes logical and practical sense, as ‘actions taken’ is easily understood to encompass things done by an agency to an alien.” Valderramar-Fonseca, 116 F.3d at 856.
Therefore, by the time the IJ acted on August 25, 1999, by entering a removal order, she correctly decided that Guzman’s robbery conviction was an aggravated felony because the term of imprisonment for his offense exceeded one year.
(B) INA § 212(c) Relief
Guzman next argues that the IJ erred, and violated his due process rights, when she failed to advise him of the possibility of relief under 8 U.S.C. § 1182(c) (INA § 212(c)). We agree that the IJ erred. See United States v. Muro-Inclan, 249 F.3d 1180, 1183-84 (9th Cir.2001).
When the proceedings against Guzman commenced, consideration for waiver of deportation pursuant to 8 U.S.C. § 1182(c) (1995) (INA § 212(c)) was available.[9] However, the AEDPA was enacted a few months later and under its provisions § 1182(c) was amended to entirely eliminate the phrase “served for such felony ... a term of imprisonment of at least 5 years.” AEDPA § 440(d). However, as we have previously held, the § 440(d) provision was not effective as to proceedings which had commenced prior to the date of its enactment. See Magana-Pizano v. INS, 200 F.3d 603, 611 (9th Cir.1999). In other words, when Guzman pled guilty to first degree robbery, the protections previously offered by § 1182(c) remained in full force and effect.[10]
*1100 By the time Guzman pled guilty, IIRIRA had also been enacted and it eliminated relief under § 1182(c) (INA § 212(c)). IIRIRA § 304(b). However, that provision did not apply to aliens, like Guzman, whose proceedings had commenced before the enactment of IIRIRA. See Pascua v. Holder, 641 F.3d 316, 321 (9th Cir.2011).
In other words, at the time Guzman pled guilty, for him the § 1182(c) relief provision was “in full bloom, [and] the amending and repealing statutes did not retroactively take away that provision.” United States v. Leon-Paz, 340 F.3d 1003, 1006 (9th Cir.2003).
In short, the IJ erred when she failed to tell Guzman of the possibility that § 1182(c) (INA § 212(c)) relief was available; that violated his due- process rights. Moreover, “the district court erred when it held to the contrary.” Leorir-Paz, 340 F.3d at 1007.'
That leaves the issue of prejudice to be resolved. The issue was not addressed by the district court, but should now be considered by it. See id. As we declared in Leorir-Paz, id.:
We, therefore, vacate [Guzman’s] conviction and sentence, and remand the case to the district court so that it can consider whether [Guzman] was prejudiced by the deprivation of his due process rights in his [1999] removal proceeding. If he was not prejudiced, the district court may reinstate the conviction and sentence. If he was prejudiced, the district court must dismiss the indictment.
(C) INA § 212(h) Relief
Guzman finally argues that the IJ erred, and violated his due process rights, when she failed to advise him of the possibility of relief under 8 U.S.C. § 1182(h) (INA § 212(h)).[11] We do not agree.
Because he had committed an aggravated felony, that would preclude him from relief if he was an LPR who had been “lawfully admitted for permanent residence.” 8 U.S.C. § 1182(h) (1999) (INA § 212(h)). Guzman was not admitted as an LPR; he became one some ten years after he entered the United States. Nevertheless, commencing before the IJ decided Guzman’s case[12] and for over a decade thereafter, the BIA interpreted that phrase to include those who were accorded LPR status after their admission.[13] Ae- *1101 cording to that interpretation, Guzman would not be eligible for § 1182(h) consideration. But in 2010, we decided that “admitted” meant what that word normally means, that is, at entry only; it did not include those who later become LPRs on one basis or another. See Negrete-Ramirez v. Holder, 741 F.3d 1047, 1051 (9th Cir.2014); see also Hing Sum v. Holder, 602 F.3d 1092, 1096 (9th Cir.2010). We do not question that decision[14] and it certainly would entitle Guzman to § 1182(h) consideration if he were before the IJ at this time.
However, what we are concerned with here is whether the IJ had to predict that possibility when she advised Guzman of his rights in 1999. We think not. As we have previously declared, with narrow exceptions,[15] “an IJ’s duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing.” United States v. Lopez-Velasquez, 629 F.3d 894, 895 (9th Cir.2010) (en banc). The change wrought by our decision was one of substantive law about which clairvoyance could not have been expected of the IJ. See Vidal-Mendoza, 705 F.3d at 1017; Lopez-Velasquez, 629 F.3d at 900. Thus, Guzman’s due process rights were not violated when the IJ failed to advise him of possible relief under § 212(h). The IJ could not have been expected to know that relief might be possible under the circumstances.

CONCLUSION

While we do not intend to vilipend legislative efforts in this area of the law, we must say that, as is all too often the case, it has taken a good deal of concentrated praxis to wend our way through the maze . of overlapping statutory commands that affect the seemingly simple question of whether an IJ was a seer who could discover what Guzman had to be told at the time of his hearing before her. We have determined that the IJ correctly decided that Guzman’s robbery conviction was an aggravated felony, and did not err when she failed to inform him that he might be entitled to relief under 8 U.S.C. § 1182(h) (INA § 212(h)). However, she did err when she failed to inform him that he might be entitled to relief under 8 U.S.C. § 1182(c) (INA § 212(c)). Thus, because he was denied due process in that respect, if he was also prejudiced as a result, the indictment for violation of 8 U.S.C. § 1326 must be dismissed. Therefore, we vacate his conviction and sentence and remand to the district court for further proceedings.
VACATED and REMANDED.

. See Cal.Penal Code §§ 211, 212.5(a).

. We recognize that removal is the term used currently, but we use deportation throughout to avoid any undue complexity or confusion.

. See 8 U.S.C. § 1101 (a)(43)(G) (1995).

. See 8 U.S.C. § 1182(c), (h) (1995).

. We will say more about effective dates hereafter.

. Supra n. 5.

.The parties agree that Guzman was not de-portable on the basis of the concealed weapon offense. Thus, we do not further consider that issue at this time, except to note that upon remand the district court should not rely upon that offense either.

.Guzman asks that we overrule our prior cases which explain the meaning of "actions taken.” See Saqr v. Holder, 580 F.3d 414, 422 (6th Cir.2009) (holding that the phrase refers to the commencement of a proceeding only). That, of course, we cannot do. See Avagyan v. Holder, 646 F.3d 672, 677 (9th Cir.2011).

. The section provided for discretionary relief, but excluded relief for "an alien who' has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.”

. We recognize that at that time and at the time the IJ acted, the Board of Immigration *1100 Appeals (BIA) had determined that the provisions of § 440(d) did apply to cases like Guzman's. See In re Soriano, 21 I. & N. Dec. 516, 519 (B.I.A.1996) overruled by Magana-Pizano, 200 F.3d at 611 n. 11. Nevertheless, the IJ knew, or should have known, that we had not yet addressed the retroactivity question and, therefore, that the BIA’s ruling did not obviate her duty to inform Guzman of the § 1182(c) possibility. See Vidal-Mendoza, 705 F.3d at 1017-18, 1018 n. 6. ("Because only the federal courts, and not the BIA, have the authority to determine a 'question of statutory retroactivity,' the IJ's duty to inform an alien of a ‘reasonable possibility’ of the continued availability of § 212(c) relief was not eliminated by the BIA's conclusion on this issue.” (citations omitted)).

.The section as modified by IIRIRA § 348 provides for waiver of inadmissibility for aliens whose denial of admission "would result in extreme hardship to [a] United States citizen or lawfully resident spouse, parent, son ' or daughter of such alien.” § 1182(h)(1)(B). But: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if ... since the date of such admission the alien has been convicted of an aggravated felony.” § 1182(h) (closing paragraph).

. See In re Rosas-Ramirez, 22 I. & N. Dec. 616, 618-19 (B.I.A.1999) (interpreting the phrase as used in INA § 237(a)(2)(A)(iii)); see also 8 U.S.C. § 1101(a)(20).

. See In re Koljenovic, 25 I. & N. Dec. 219, 220-21 (B.I.A.2010) (interpreting the phrase in INA § 212(h) specifically), overruled by In re J-H-I-, 26 I. & N. Dec. 563, 564-65 (BIA *1101 2015) (withdrawing from decision in light of “overwhelming circuit court authority”).

. Interestingly enough, we had previously interpreted the phrase to encompass those who were lawfully admitted at any time; not just at entry. See Garcia-Quintero v. Gonzales, 455 F.3d 1006, 1015 (9th Cir.2006); Shivaraman v. Ashcroft, 360 F.3d 1142, 1147 (9th Cir.2004); Ocampo-Duran v. Ashcroft, 254 F.3d 1133, 1134-35 (9th Cir.2001). Like Rosas-Ramirez, those cases were not considering § 212(h) as such. We mention them here solely for the purpose of pointing out that the restriction which we later discovered in the language of § 212(h), which limited that section to those who were admitted as LPRs at the border, was far from obvious ten years earlier.

. See discussion in part (B) of this opinion regarding the narrow exception for retroactivity decisions.