
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50477 |
| Plaintiff - Appellee, | D.C. No. 2:13-cr-00024-SJO-1 |
| v. | |
| CARLOS FERNANDO FELIX MORALES, AKA Carlos Fernando Felix, AKA Carlos Fernando Felix-Morales, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted October 19, 2015
Pasadena, California

Before: PREGERSON and CALLAHAN, Circuit Judges and BASTIAN,[**] District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Stanley Allen Bastian, District Judge for the U.S. District Court for the Eastern District of Washington, sitting by designation.

Carlos Felix-Morales appeals the district court's denial of his motion to withdraw his guilty plea and to dismiss the Information charging him with unlawful reentry under 8 U.S.C. § 1326. We reverse and remand.

Felix-Morales was born in Mexico but came to the United States as a young man to find work in 1985. He obtained temporary residency as a "Special Agricultural Worker" in 1988 and subsequently adjusted his status to legal permanent resident in 1990. He ran a trucking business with his brother, and worked to support his wife, a legal permanent resident, and two children, both U.S. citizens. Felix-Morales also has two brothers and a sister living in the U.S.

Felix-Morales was deported in 1997 after being convicted for statutory rape under California Penal Code § 261.5, which at that time was considered a categorical aggravated felony. The conviction underlying his 1997 deportation is no longer considered an aggravated felony. *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc), *overruling recognized by United States v. Gomez*, 757 F.3d 885, 901 (9th Cir. 2014). Although his conviction constituted an aggravated felony at the time of his 1997 deportation, changes in statutory interpretation apply retroactively for purposes of § 1326(d). *United States v. Aguilera-Rios*, 769 F.3d 626, 631–33 (9th Cir. 2014). In March, 2013, Felix-Morales pled guilty to unlawful reentry after his 1997 deportation. In this appeal, Felix-Morales collaterally attacks his 1997 deportation under § 1326(d).

We review a collateral attack on deportation de novo. *Aguilera-Rios*, 769 F.3d at 629. A collateral attack on deportation involves three elements: (1) exhaustion of administrative remedies; (2) deprivation of judicial review; and (3) a deportation that was fundamentally unfair. 8 U.S.C. § 1326(d); *see also Aguilera-Rios*, 769 F.3d at 630. The government agrees that the 1997 deportation was fundamentally unfair but argues that Felix-Morales has not established the first two elements.

Sections 1326(d)(1) and (d)(2) are satisfied in three overlapping categorical circumstances: (1) when the IJ failed to inform defendant of his right to appeal his deportation; (2) when the IJ failed to inform defendant of eligibility for a certain kind of relief; or (3) when defendant's waiver of a right to appeal was not "considered and intelligent." *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130–31 (9th Cir. 2013).

Felix-Morales was not deportable because of his 1997 conviction, which is no longer considered an aggravated felony. Therefore, any waiver of his right to appeal was necessarily based on incorrect information. As such, Felix-Morales's waiver should not have been treated as "considered and intelligent." He has thus satisfied §§ 1326(d)(1) and (d)(2). *Id.* Accordingly, we reverse the conviction and vacate the district court's order denying Felix-Morales's motion to dismiss the

Information.  And we remand for further proceedings consistent with the views

herein expressed.

**REVERSED and REMANDED.**

USA v Morales, No. 13-50477

Callahan, Circuit Judge, dissenting:

In 1997, an Immigration Judge (IJ) held that Felix-Morales was removable as an aggravated felon due to his conviction under California Penal Code § 261.5 for the statutory rape of his fourteen-year old, learning-disabled niece. Sixteen years later, Felix-Morales was charged with illegal reentry following deportation in violation of 8 U.S.C. §§ 1326(a), (b)(2). This criminal appeal requires us to decide whether Felix-Morales may collaterally attack the 1997 deportation order that is a predicate of his conviction below for illegal reentry. The unambiguous answer set down by Congress in 8 U.S.C. § 1326(d) is "no." Felix-Morales may not collaterally attack his removal order because he neither exhausted his administrative remedies nor sought judicial review of the IJ's conclusion that he was a removable felon. The majority violates Congressional intent by reading two of § 1326(d)'s three requirements for collaterally attacking a removal order out of existence. The majority's decision also conflicts with previous decisions by the Supreme Court, our court, and other circuits. I thus respectfully dissent.

1. Under § 1326(d), an alien may not collaterally attack the validity of a deportation order in a subsequent criminal proceedings "unless the alien demonstrates":

1

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). These three prerequisites for a collateral attack are conjunctive, as the word "and" establishes. Accordingly, a deportation order may be "fundamentally unfair" and thus satisfy § 1326(d)(3), but still be immune from collateral attack where an alien did not satisfy (d)(1) and (d)(2) by exhausting administrative remedies and seeking judicial review. Congress's judgment in § 1326(d) that a "fundamentally unfair" deportation order is not subject to collateral attack in these circumstances might seem inequitable. But § 1326(d)(1) and (d)(2) serve the important interest of finality and ensure fairness by barring collateral attacks only where aliens were previously provided the opportunity to seek meaningful review. Felix-Morales has not questioned the statute's constitutionality.

2.      Here, the government concedes that § 1326(d)(3) is met. The 1997 deportation order is now "fundamentally unfair" within the meaning of § 1326(d)(3) because, years after the IJ's decision, this Court held that statutory rape under California Penal Code § 261.5 is not an aggravated felony. *Estrada-*

2

*Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc).  The issue then is whether Felix-Morales has demonstrated that the first two requirements of § 1326(d) are met.  He has not.  Felix-Morales neither exhausted administrative remedies nor sought judicial review of the IJ's conclusion that he was an aggravated felon.  Rather, after being advised of his right to appeal, he waived his right to appeal.  It follows inexorably that Congress has barred his collateral attack of the IJ's conclusion that he was removable as an aggravated felon.  *See* 8 U.S.C. § 1326(d).

3.  The majority holds that Felix-Morales is excused from having to meet § 1326(d)'s first two requirements because the IJ erroneously concluded that statutory rape is an aggravated felony.  According to the majority, the IJ's legal conclusion, which was consistent with then-controlling law, prevented Felix-Morales from knowingly and intelligently waiving his right to appeal.  The majority relies on cases holding that where an IJ fails to notify an alien about his right to appeal, any waiver or failure to exhaust and appeal cannot have been intelligent and considered.  *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130-31(9th Cir. 2013) (collecting cases); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048–50 (9th Cir. 2004).

The majority's reliance on these cases is misplaced.  It is true that we have

3

read into § 1326(d)(1) and (d)(2) a requirement that any waiver or failure to exhaust administrative and judicial remedies must be "considered and intelligent." *See, e.g.*, *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004). This makes sense in light of the requirement that there be "some meaningful review of the administrative proceeding" in order for an agency's determination to support a later criminal conviction. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 838 (1987). There can be no meaningful review of an adverse agency decision where an alien was deprived of a meaningful opportunity to seek review.

However, the IJ's conclusion that statutory rape is an aggravated felony was not comparable to an IJ's failure to notify an alien about his right to appeal. The IJ's error in this case did not keep Felix-Morales in the dark, preventing him from being able to pursue administrative and judicial remedies. Rather, it is undisputed that Morales was informed that he could appeal. Pursuing administrative and judicial remedies is precisely how mistakes of legal interpretation are corrected. In fact, that is how we came to overturn our precedent and set aside the Bureau of Immigration Appeal's conclusion that a conviction under California Penal Code § 261.5 was an aggravated felony when we sat en banc in *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008). Accepting the majority's decision means reading § 1326(d)(1) and (2) out of existence—any legal ruling in a deportation

4

order that is contrary to intervening higher authority could be collaterally attacked in a subsequent criminal proceeding, regardless of whether the alien exhausted administrative remedies or sought judicial review.

4.     In addition to violating Congressional intent, the majority's decision is inconsistent with our precedent. For example, in deciding a petition for habeas corpus, we held that an alien who unlawfully reentered the United States in violation of § 1326 was not deprived of meaningful review "at the time of the IJ's original ruling because the law at the time was unfavorable to him." *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1173 (9th Cir. 2001). We reasoned that the alien "had the right to appeal his removal to the BIA and, if unsuccessful there, to this court, yet he voluntarily waived that right." *Id.* Similarly, in *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1126 (9th Cir. 2013), we held that while an alien had exhausted his administrative remedies, he could not collaterally attack the validity of his deportation order because he had not demonstrated an "error or obstacle related to his deportation proceedings improperly deprived him of the opportunity for judicial review, as required by 8 U.S.C. § 1326(d)(2)."

The majority's decision is also inconsistent with the decisions of other circuits. In *United States v. Rodriguez*, 420 F.3d 831, 834 (8th Cir. 2005), for

5

example, the Eight Circuit held that "[a] subsequent change in the law" regarding whether drunk driving is an aggravated felony did "not render [an alien's] waiver of his right to appeal not 'considered and intelligent.'"

Finally, the majority's decision is at odds with Supreme Court precedent. As the Supreme Court held long ago, the fact that an agency made a legal error does not excuse the need for administrative exhaustion. "Obviously, the rules requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51–52 (1938). As these cases also make plain, the majority errs in holding that Felix-Morales is excused from § 1326(d)(1) and (d)(2) because of the IJ's now incorrect legal conclusion that statutory rape is an aggravated felony.

5.	The majority does not reach the question of whether Felix-Morales may collaterally attack his 1997 deportation order in light of a second error made by the IJ, that being his failure to advise Morales that he was eligible to apply for relief under § 212(c) of the Immigration and Nationality Act.

In contrast to the IJ's conclusion that statutory rape is an aggravated felony, the IJ's failure to inform Felix-Morales of potential discretionary relief deprived him of the opportunity to seek meaningful administrative and judicial remedies.

6

Therefore, he is excused from the requirements of 8 U.S.C. § 1326(d)(1) and (d)(2) with respect to this error. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

However, for this claim, Felix-Morales has not satisfied § 1326(d)(3), which requires him to demonstrate that (1) his due process rights were violated by the IJ's failure to advise, and (2) he suffered prejudice as a result of the error. *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015–16 (9th Cir. 2013). "We have held that the IJ's failure to inform the alien of potential [discretionary] relief . . . meets the first prong of this test." *Id.* at 1016. To meet the second prong, an alien "must make a 'plausible showing' that an IJ presented with all of the facts would exercise discretion in the alien's favor." *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015). This standard requires more than "a showing of mere possibility or conceivability." *United States v. Valdez-Novoa*, 780 F.3d 906, 915 (9th Cir.), *cert. denied*, 135 S. Ct. 2913 (2015). The alien must "show[] that aliens with similar circumstances received relief." *Gonzalez-Flores*, 804 F.3d at 927.

First, we identify Felix-Morales's positive and negative equities that the IJ would have considered. *Gonzalez-Flores*, 804 F.3d 920, 927.[1] With respect to

---

[1] "Favorable considerations include: 1) family ties within the United States; 2) residence of long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is

7

positive equities, Felix-Morales had lived in the United States for a little over nine years and was employed. He had family in the United States, and his wife, children, and siblings remain in the country today. While he did not undergo any psychological counseling for his conviction of statutory rape, friends and neighbors submitted letters attesting to his good character. Weighing heavily against these positive equities, however, is the fact that Felix-Morales was convicted for the statutory rape of his fourteen-year old, learning-disabled niece.

Second, we must determine whether Felix-Morales has shown that aliens in similar circumstances have received discretionary relief. He identifies cases that involve aliens with similar positive equities but who were convicted of drug crimes. Felix-Morales's statutory rape conviction is far more serious. In light of his negative equities, the district court reasonably determined that Felix-Morales has not shown that it is plausible that he would have received discretionary relief. *See Valdez-Novoa*, 780 F.3d at 920.

---

not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character." *Yepes-Prado v. INS*, 10 F.3d 1363, 1366 (9th Cir. 1993). Negative factors include: "1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; 4) other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.*

Accordingly, Felix-Morales's conviction should be affirmed.