NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   20-30038 |
| Plaintiff-Appellee, | D.C. No. 2:19-cr-00165-TOR-1 |
| v. | |
| ARMANDO SANTOS-SANTOS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted October 6, 2021
Seattle, Washington

Before:  PAEZ, M. SMITH, and NGUYEN, Circuit Judges.
Dissent by Judge PAEZ.

Armando Santos-Santos was indicted on one count of illegal reentry after removal in violation of 8 U.S.C. § 1326.  After the district court denied his motion to dismiss the indictment, Santos-Santos pled guilty to the charge while reserving the right to appeal the denial of that motion.  Santos-Santos argues on appeal that the district court should have dismissed the indictment because his underlying

_____

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

order of removal was rendered invalid by due process violations at his hearing before the immigration judge. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

A defendant charged with unlawful reentry may bring "a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction." *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012) (per curiam). The defendant must demonstrate, among other things, that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). The entry of a removal order is "fundamentally unfair" only if the noncitizen suffers prejudice resulting from a due process violation. *United States v. Gonzalez-Flores*, 804 F.3d 920, 927–28 (9th Cir. 2015).

Here, Santos-Santos contends that he suffered prejudice because in the absence of the alleged due process violations, he could have received voluntary departure relief. To succeed on this argument, Santos-Santos must make a "'plausible showing' that an [immigration judge] presented with all of the facts would exercise discretion in [his] favor." *Id.* at 927 (citation omitted). In making this determination, we weigh the positive and negative equities that an immigration judge would have considered. *Id.* Positive equities include "long residence, close family ties to the United States, and humanitarian needs," while negative equities include "the existence, seriousness, and recency of any criminal record" and "any

other evidence of bad character or the undesirability of the applicant as a permanent resident." *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1265 (9th Cir. 2013) (citations omitted).

Santos-Santos's negative equities at the time of his removal proceeding included convictions for driving without a license in 2006 and 2008. More significantly, in 2009 he was convicted of driving under the influence ("DUI"), which is considered a "serious negative factor" in the voluntary departure analysis. *Id*. The seriousness of this conviction is further underscored by Santos-Santos's blood alcohol level, which was significantly over the legal limit. Within months of that offense, he resumed driving and was convicted again of driving without a license and of failing to yield the right of way. Lastly, he was convicted of shoplifting, which ultimately led to his removal.

Santos-Santos presents minimal positive equities. While he resided and worked in the United States for several years, his only family ties to lawful permanent residents or citizens of the United States are his nephews. And while he was at the time engaged to a United States citizen, they did not have any children and he was not the sole earner in that relationship. We therefore find that Santos-Santos fails to carry his burden of showing that voluntary departure would plausibly have been granted. *See, e.g.*, *Matter of Sanchez-Rodriguez*, 2017 WL 8785847, at *1 (BIA Dec. 6, 2017) (hardship resulting from noncitizen's residence

in the country for 7 years, citizen fiancée, and citizen children did not outweigh his conviction for a hit and run and arrest for DUI); *Matter of Hernandez*, 2016 WL 807203, at *2 (BIA Feb. 5, 2016) (noncitizen's convictions for DUI with a blood alcohol level more than twice the legal limit and fleeing the scene of an accident and his extended period of driving without a license were "compelling adverse factors" that outweighed his significant term of residence and consistent employment).

Santos-Santos cites to several cases, but none support his argument. *See United States v. Valdez-Novoa*, 780 F.3d 906, 916 (9th Cir. 2015) (noting that we have "placed the burden on the defendant to show that he was prejudiced . . . [and] evaluated the authorities cited by the defendant" to determine if he has carried his burden). *Matter of Pina-Galindo*, 26 I. & N. Dec. 423 (BIA 2014), did not address the noncitizen's counterbalancing positive equities. And the record in *Matter of Battista*, 19 I. & N. Dec. 484 (BIA 1987), reflects compelling positive equities, like the noncitizen's marriage to a citizen who was pregnant with his child, that are absent in the present case.

Because Santos-Santos has failed to carry his burden on the prejudice element of his collateral challenge, we need not reach the remaining issues raised on appeal. We therefore affirm the district court's denial of his motion to dismiss the indictment.

**AFFIRMED.**



FILED

JUL 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**Paez**, Circuit Judge, dissenting:

Santos-Santos's removal proceedings violated his due process rights and deprived him of judicial review, therefore he is constitutionally entitled to collaterally attack his removal order. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837-39 (1987); *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1129 (9th Cir. 2013). Rather than affirm on an issue that the government never argued and the district court never addressed, we should afford Santos-Santos that right and decide the issues raised on appeal. Because he has satisfied the first two prongs of 8 U.S.C. § 1326(d) and shown a due process violation, I would reverse and remand for the district court to address prejudice in the first instance.

**1.** To sustain a collateral attack under § 1326(d), Santos-Santos must show that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(1)-(3). An order is fundamentally unfair if "the deportation proceeding violated the [noncitizen's] due process rights and the [noncitizen] suffered prejudice as a result." *United States v. Arias-Ordonez*, 597 F.3d 972, 976 (9th Cir. 2010). A noncitizen may waive the right to appeal to the Board of Immigration Appeals ("BIA") and consequently, to seek judicial review, but due process requires that the waiver be

"considered and intelligent." *Mendoza-Lopez*, 481 U.S. at 840; *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010).

Santos-Santos's waiver of his right to appeal was not "considered or intelligent," and thus violated due process, for two reasons. First, the immigration judge ("IJ") failed to advise Santos-Santos of his apparent eligibility for pre-conclusion voluntary departure. *See Mendoza-Lopez*, 481 U.S. at 840 (holding that an appeal waiver is invalid if the noncitizen was not advised of the eligibility for relief); *Gonzalez-Villalobos*, 724 F.3d at 1131.[1] Second, the IJ conducted a "mass silent waiver" that "impermissibly presume[s] acquiescence in the loss of the right to appeal and fails to overcome the presumption against waiver." *United States v. Lopez-Vasquez*, 1 F.3d 751, 755 (9th Cir. 1993) (internal quotations and citation omitted); *see also United States v. Zarate-Martinez*, 133 F.3d 1194, 1197-98 (9th Cir. 1998), *overruled on other grounds recognized in United States v. Ballesteros-Ruiz*, 319 F.3d 1101, 1105 (9th Cir. 2003); *United States v. Pallares-Galan*, 359 F.3d 1088, 1096-97 (9th Cir. 2004).

The Supreme Court has instructed that if an appeal waiver in a removal proceeding is not "considered or intelligent," the noncitizen was deprived of the

---

[1] Contrary to the government and district court's understanding of pre-conclusion voluntary departure, the means to fund such a departure is not a pre-requisite to apply for that form of relief. *See Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (en banc); *Compare* 8 U.S.C. § 1229c(b)(1)(D); 8 C.F.R. § 1240.26(c)(1) *with* § 1229c(a)(1); § 1240.26(b)(1)(i).

judicial review that due process requires, and a collateral attack of the removal order must be available. *Mendoza-Lopez*, 481 U.S. at 838-39. Those constitutional principles led to Congress's enactment of § 1326(d). *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1619 (2021). Accordingly, we have consistently held that if a noncitizen did not validly waive the right to appeal, the noncitizen satisfies § 1326(d)(1)-(2) and may collaterally attack the removal order. *See Gonzalez-Villalobos*, 724 F.3d at 1131 (discussing cases).

The Court's decision in *Palomar-Santiago*, 141 S. Ct. 1615, did not change that outcome. There, the Court made clear that it was narrowly addressing the situation where a "removal order was premised on a conviction that was later found not to be a removable offense." *Id.* at 1619. The Court rejected our precedent that "excused" a defendant from having to prove § 1326(d)(1) and (d)(2) in that situation and held that courts "may not excuse a failure to exhaust" when faced with "mandatory language" in a statutory exhaustion provision. *Id.* at 1620-21 (citation omitted). As the Court explained, our circuit precedent under scrutiny in *Palomar-Santiago* relied upon an "extrastatutory exception" to § 1326(d)(1) and (d)(2). *Id.* at 1621. Santos-Santos's invalid appeal waiver, on the other hand, is directly tied to an established constitutional principle and § 1326(d)'s text. The exhaustion provision itself is limited to remedies that "may have been *available*." § 1326(d)(1) (emphasis added).

3

In support of our rule, Palomar-Santiago relied on *Ross v. Blake*, 578 U.S. 632 (2016), to argue that an administrative remedy is not "practically 'available' under § 1326(d)(1)" where an IJ erroneously informs a noncitizen that a conviction renders them removable. *Palomar-Santiago*, 141 S. Ct. at 1621. The Court rejected that argument, explaining that "[n]othing in *Ross*" suggests that the "substantive complexity of an affirmative defense can alone render further review of an adverse decision 'unavailable.'" *Id.* But unlike the situation in *Palomar-Santiago*, Santos-Santos need not rely on a novel argument because the Supreme Court has already recognized that an invalid appeal waiver does, in fact, "render[] direct review of the Immigration Judge's determination unavailable" and demands the availability of collateral review. *Mendoza-Lopez*, 481 U.S. at 841.

Indeed, there is no salient distinction between Santos-Santos's case and *Mendoza-Lopez*. Like Santos-Santos, the noncitizens had waived their right to appeal to the BIA, but because the IJ had failed to advise them of their eligibility for relief, those waivers were not "considered or intelligent." *Id.* at 840. I do not read *Palomar-Santiago* as having overruled the basic due process principles recognized in *Mendoza-Lopez*. *See Palomar-Santiago*, 141 S. Ct. at 1619 (reiterating the Court's holdings in *Mendoza-Lopez*). As I understand *Palomar-Santiago*, it removed the extra-statutory gloss we had crafted onto § 1326(d) and

4

emphasized that a defendant must satisfy all three elements of § 1326(d) to prevail on a collateral attack of a removal order. *See id.* at 1620-21.

In sum, a direct application of § 1326(d) and *Mendoza-Lopez*, not a judicially created exception, shows that Santos-Santos satisfied the first two prongs of that provision. Section 1326(d)(1) requires exhaustion of remedies "that may have been available," but an appeal to the BIA was not available to him. *Mendoza-Lopez*, 481 U.S. at 841.[2] Santos-Santos was also deprived of judicial review. *See* § 1326(d)(2); *Pallares-Galan*, 359 F.3d at 1096 ("Effective deprivation of [a noncitizen's] administrative appeal serves to deprive him of the opportunity for judicial review as well." (citing *Mendoza-Lopez*, 481 U.S. at 840)).

**2.** Having satisfied the first two prongs of § 1326(d) and shown a violation of his due process rights, the last hurdle Santos-Santos must overcome is prejudice. *See Arias-Ordonez*, 597 F.3d at 976. The record indicates "an IJ could have concluded that his potential claim for relief from deportation would be 'plausible,'" *Pallares-Galan*, 359 F.3d at 1104, particularly given the modest form of pre-conclusion voluntary departure relief Santos-Santos would have sought.

---

[2] A noncitizen exhausts administrative remedies by appealing to the BIA. *See, e.g.*, *Palomar-Santiago*, 141 S. Ct. at 1621 (describing exhaustion of administrative remedies as "appealing the immigration judge's decision to the BIA"); *Diaz-Jimenez v. Sessions*, 902 F.3d 955, 959 (9th Cir. 2018) ("To satisfy the exhaustion requirement, Diaz needed to 'put the BIA on notice' in his appeal from the IJ's removal order." (citation omitted)).

*Compare United States v. Arrieta*, 224 F.3d 1076, 1080 (9th Cir. 2000) (finding prejudice where the petitioner had to show "extreme hardship" for relief) *with Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (en banc) (holding that pre-conclusion voluntary departure requires "much less" than post-conclusion voluntary departure and does not require a showing of good moral character). I cannot join the majority, however, because rather than deciding that for ourselves, we should afford the district court the opportunity to decide the question of prejudice in the first instance. *See United States v. Melendez-Castro*, 671 F.3d 950, 954-55 (9th Cir. 2012) (holding that Melendez-Castro was not advised of his right to relief but remanding to the district court "for consideration of prejudice in the first instance"); *United States v. Guzman-Ibarez*, 792 F.3d 1094, 1100 (9th Cir. 2015) (same); *Pallares-Galan*, 359 F.3d at 1104 (same); *United States v. Leon-Paz*, 340 F.3d 1003, 1007 (9th Cir. 2003) (same).

I acknowledge that we may affirm the district court on any basis supported by the record. *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042 (9th Cir. 2012). But we must foremost remain mindful that "we are a court of review, not first view.'" *Cutter v. Wilkinson*, 544 U.S. 709, 719 n.7 (2005); *see also Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014). Because the district court erroneously found no due process violation at all, it has never considered Santos-Santos's equities and whether they establish a plausible claim

6

for relief.  The government has also never briefed whether Santos-Santos can show prejudice, much less offered the authorities proffered by the majority.  *See Shirk*, 773 F.3d at 1007 ("Where an argument has been 'briefed only cursorily before this Court and [was] not ruled on by the district court,' it is normally inappropriate for us to evaluate the argument in the first instance." (alteration in original) (citation omitted)); *United States v. Valdez-Novoa*, 780 F.3d 906, 916 (9th Cir. 2015) (explaining that the prejudice analysis of § 1326(d)(3) includes comparing "the authorities offered by the government" to the authorities cited by the defendant).  On this record, I am not prepared to conclude that the district court would have found there was no plausible claim for relief and usurp that court's function as the factfinder.  I respectfully dissent.